**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@KRInternetLaw.com
Katherine E. Hollist (*pro hac vice* to come)
kate@KRInternetLaw.com
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

**POLLOCK COHEN LLP**
Raphael Janove (*pro hac vice* to come)
rafi@pollockcohen.com
Adam Pollock (*pro hac vice* to come)
adam@pollockcohen.com
60 Broad St., 24th Fl.
New York, NY 10004
Telephone: (212) 337-5361

**JAY KUMAR LAW**
Jay Kumar (*pro hac vice* to come)
jay@jaykumarlaw.com
73 W. Monroe Street, Suite 100
Chicago, IL 60603
Telephone: (312) 767-7903

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **CHARISSA KEEBAUGH, STEPHANIE NEVEU,** and **HEATHER MERCIERI,** on behalf of themselves and all others similarly situated, | Case No. 2:22-cv-01272 |
| Plaintiffs, | **COMPLAINT** |
| v. | **CLASS ACTION** |
| **WARNER BROS. ENTERTAINMENT INC.,** a Delaware corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

*Kronenberger Rosenfeld*
*150 Post Street, Suite 520 San Francisco, CA 94108*

This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant. This Court has personal jurisdiction over Warner Bros. Entertainment Inc., because its principal place of business is in Burbank, California, it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

Plaintiffs Charissa Keebaugh ("Keebaugh"), Stephanie Neveu ("Neveu"), and Heather Mercieri ("Mercieri") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, for their Complaint against Warner Bros. Entertainment Inc., ("Defendant" or "Warner Bros.") allege, on knowledge as to their own actions, the investigation of Plaintiffs' counsel, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is a class action lawsuit against Warner Bros. for falsely advertising price discounts for in-game purchases in its mobile application game (or "app"), Game of Thrones Conquest ("GOTC"). GOTC has spent 105 weeks as one of the top 25 highest grossing applications on Apple's App Store, and is the number three highest grossing strategy game across both Apple and Android devices, with over 20 million downloads and approximately 300,000 active users as of December 2020.

2. GOTC has generated over $750 million in revenue since its 2017 inception by offering players "microtransactions" - the ability, while in the game, to make discrete in-app purchases of gold, building material, crafting material, armor, and other valuables necessary to level up one's account.

1    These in-app purchases, or "packs," range in price from $0.99 to $99.00 each.

2        3.      However, in its direct marketing to consumers (including

3    representations made at the time of purchase), Warner Bros. advertised false

4    former prices to induce players into believing they must act quickly to take

5    advantage of a limited-time sale price.

6        4.      For several years, Warner Bros. deceived consumers by offering

7    specific limited-time "bonuses" that purported to massively discount the price

8    of its in-game goods. It used strikethrough pricing and statements like "Limited

9    Time! 2000% Bonus Gold!" or "Black Friday Sale" to trick consumers into

10   believing they were benefitting from limited-time promotions that substantially

11   increased the value of their in-game purchases, especially in relation to

12   purchases made by competing players. These purported savings were false,

13   however, because the original pricing that these ads referenced were

14   fabricated.

15       5.      These advertisements ran for years. But at no point, let alone

16   within three months of the advertised discounts, were these in-game items

17   ever actually offered at a non-discounted price—*i.e.*, **without** their "limited

18   time" bonuses. In other words, Warner Bros. never sold these items at their

19   "original" price. It just offered false discounts from an original price that did not

20   exist, and its players bought packs on "sale" that were the same prices they

21   would ordinarily pay.

22       6.      Furthermore, the advertised "original" pricing does not reflect the

23   prevailing market retail pricing for these virtual in-game items, which have no

24   real-world value and whose pricing is entirely determined by Warner Bros.

25       7.      The Federal Trade Commission ("FTC") describes false former

26   pricing schemes as deceptive:

27           One of the most commonly used forms of bargain
             advertising is to offer a reduction from the advertiser's
28           own former price for an article. If the former price is

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9

the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

10    16 C.F.R. §233.1(a).

11    8.    California statutory and regulatory law also expressly forbid such
12    pricing schemes. Specifically, Cal. Bus. & Prof. Code §17501 states:

13
14
15
16
17
18

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

19    9.    Defendant knew, or should reasonably have known, that its
20    comparative price advertising was false, deceptive, misleading, and unlawful.

21    10.    Defendant has fraudulently concealed from and intentionally
22    failed to disclose to Plaintiffs and the putative class members the truth about
23    its advertised price discounts and former prices.

24    11.    Through this false and deceptive marketing, advertising, and
25    pricing scheme, Warner Bros. has violated California law prohibiting the
26    advertisement of goods for sale as discounted from false former prices, and
27    prohibiting misleading statements about the existence and amount of price
28    reductions.

12.     The claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

13.     Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Warner Bros. is situated.

14.     Plaintiffs, individually and on behalf of all others similarly situated, hereby seek restitution, injunctive relief, punitive damages, attorney's fees, and all other relief which the Court may deem appropriate.

## JURISDICTION

15.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

16.     This Court has personal jurisdiction over Warner Bros. Entertainment Inc., because its principal place of business is in Burbank, California, it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

## VENUE

17.     Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

18.     In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant resides in this District and is subject to this Court's personal jurisdiction.

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**PARTIES**

19.   Plaintiff Charissa Keebaugh is an individual who resides in Vancouver, Washington. She began playing GOTC during May of 2020, having downloaded the game from the Apple App Store. She purchased several False Gold Strikethrough packs (defined below), which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

20.   Plaintiff Stephanie Neveu is a resident of Waddell, Arizona. She began playing GOTC during June 2019. Ms. Neveu purchased numerous False Gold Strikethrough packs and False Sale Packs (defined below) from June or July 2019 until October 2021, which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

21.   Plaintiff Heather Mercieri is a resident of Dover, New Hampshire. She began playing GOTC during July 2018. She purchased False Gold Strikethrough Packs and False Sale Packs, which she otherwise would not have purchased had she known about the deceptive advertising which she reasonably relied upon in making those purchases.

22.   Upon information and belief, Defendant Warner Bros. Entertainment Inc. is a corporation that is incorporated in Delaware and has its principal place of business in Burbank, California.

**FACTS**

23.   GOTC is a mobile application strategy game developed by Defendant Warner Brothers Entertainment, Inc., available on iPhone and Android devices through the Apple App Store and Google Play platforms, respectively. GOTC is based upon the HBO television series "Game of Thrones" and the "A Song of Ice and Fire" book series by George R.R. Martin.

24.   GOTC has spent 105 weeks as one of the top 25 highest grossing

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 applications on Apple's App Store, and is the number three highest grossing

2 strategy game across both Apple and Android devices, with over 20 million

3 downloads and approximately 300,000 active users as of December 2020.

4     25.    GOTC, while free to initially download, has generated over $750

5 million in revenue since its 2017 inception. It makes this revenue by offering

6 players "microtransactions," or discrete in-app purchases to help players

7 advance in the game. These purchases include gold, building material,

8 crafting material, armor, and other valuables, and the add-ons are necessary

9 to level up one's account. An "in-app purchase" refers to a financial

10 transaction initiated from within the mobile application itself. These in-app

11 purchases, or "packs," range in price from $0.99 to $99.99 each.

12     26.    Once a player creates an account and starts playing, she is able

13 to begin upgrading the level of her "Keep," or castle, and the buildings within

14 it. She does this to strengthen her combat abilities and therefore maintain a

15 competitive position in the coming battles for Seats of Power.

16     27.    In order to progress past a certain level in the game, it is

17 necessary to purchase in-app "packs" that contain gold, building materials,

18 crafting materials, research materials, dragon food, upgrade speed-ups,

19 bubble shields, teleports, and other items that are essential to progress in the

20 game. These essential items require spending real money, as they are

21 otherwise only available in insufficient amounts through in-game labor alone.

22     28.    After a few days of playing and regularly making upgrades, the

23 costs to purchase materials to make subsequent upgrades suddenly increase

24 exponentially. For example, the cost of upgrading one's Keep to level 8 is only

25 approximately 5,000 wood and 5,000 food. But shortly after, the cost of

26 upgrading a Keep from level 29 to level 30 is astronomical in comparison,

27 requiring nearly 900 million wood, 900 million food, 75 million stone, 23 million

28 iron, 90,000 brick, 24,000 soldier pine, and 11,000 keystones. Acquiring the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   rare resources necessary to make this upgrade alone would cost
2   approximately $600 in Advanced Building Packs, and a player must upgrade
3   several other buildings in their Keep at a similar cost in order to grow this
4   Keep level.

5      29.    These upgrades all costs gameplayers significant, real currency.
6   The packs necessary for these upgrades each have a version that is offered
7   at $99.99, $49.99, $19.99, $9.99, $4.99, and $0.99. The advertisements for a
8   particular pack at different pricing levels are identical in all respects except
9   cheaper levels display and contain less gold and resources. However,
10  progressing one's Keep to level 35, the maximum level, requires
11  approximately over $25,000 in pack purchases, assuming perfectly optimal
12  purchasing decisions and maximizing items obtained only through gameplay.

13     30.    Each and every time a player logs into the game, a pop-up
14  advertisement for a $99.99 pack fills the entire screen, prompting the player
15  to either accept the purchase or close the advertisement by clicking an "X" in
16  the corner to continue playing the game.

17     31.    Each and every displayed pack, whether located on the login pop-
18  up ad, or on the right corner, has an hourglass timer counting down the time
19  that the pack is still available, from the maximum of 59 minutes to a minimum
20  of one second.

21     32.    The hourglass timer creates a sense of urgency and scarcity to
22  induce a player to purchase a pack immediately.

23     33.    The pack advertisements consist of a graphical image which has,
24  in writing, a name of the pack. The graphical image also contains any relevant
25  descriptions of sales or special offers in which a higher quantity of items is
26  offered for the same price compared to normal versions of those packs.

27     34.    However, these advertisements are actually false, deceptive, and
28  intended to mislead players into making in-app purchases that they otherwise

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

would not have made. Defendant falsely promotes these packs as being on sale or discounted by misrepresenting that such packs include limited-time bonuses that purport to substantially increase the value of the packs. Since the game pits players against each other, there is significant pressure on players to take advantage of these limited-time offerings so that they can gain a competitive edge against opponents who presumably are left to pay full price.

35.    Additionally, the advertisements mislead players into believing they will find themselves at a competitive *disadvantage* if they do not purchase packs now, since they will be left paying full price for items their opponents were able to purchase at a discount.

36.    There are two primary categories of deceptive pack advertisements: (a) packs that offer the illusion of gold discounts through the strikethrough graphics, hereafter referred to as "False Gold Strikethrough Packs," and (b) packs that falsely advertise that a pack contains extra value by virtue of being on sale because of a holiday or as part of some other event, hereafter referred to as "False Sale Packs." Any deceptively advertised pack can belong to more than one of these categories simultaneously, or may be deceptive for a separate reason outside of the ones belonging to the two main categories.

**A.    False Gold Strikethrough Packs**

37.    The False Gold Strikethrough Packs display a small amount of gold, with a strikethrough line, and then in bold typeface display a larger amount of gold, implying that the pack once formerly contained the smaller amount of gold. For example, a $99.99 pack may have "10,000" gold with a strikethrough line over that number, and display in bigger, bolder letters "120,000" gold. The intended message is that the pack formerly contained 10,000 gold but now is equipped with 120,000 gold, making it significantly

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 more valuable.

2     38. However, these packs were in fact never offered for the smaller

3 amount of gold at all.



19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

17    39.    There are dozens of False Gold Strikethrough Packs sold at the
18  $99.99 price tier, including: Dragon Research Packs, Advanced Building
19  Packs, Advanced Teleport Packs, Troop Training Boost Packs, Enhancement
20  Packs, Crafting Materials Packs, and several more types of packs. None of
21  these packs were ever offered with 10,000 gold at the $99.99 pricing tier
22  despite having "10,000" struck through on the graphics of their respective ad
23  copies.

24    40.    All of the above packs were offered at the $49.99 price tier as well.
25  Among those packs, the struck through value was 5,000 gold next to a larger
26  gold amount in bold. However, these packs were also never previously offered
27  with 5,000 gold.

28    41.    Similarly, all of the above packs were also offered in the smaller

1  pricing tiers of $19.99, $9.99, $4.99, and $0.99—all with identical ad copies
2  with the gold amounts correspondingly smaller in both the strikethrough
3  portion and the bolder typeface. However, in all cases the smaller
4  strikethrough price was never previously offered.

5  42.   Defendant Warner Bros. had actual knowledge that the False
6  Gold Strikethrough Packs contained false or misleading misrepresentations
7  as to their prior gold values. Warner Bros. designed and promoted these
8  advertisements from 2018 until present day, where the practice of offering
9  these deceptive packs continues. Warner Bros. specifically represented in
10  advertising the False Gold Strikethrough Packs that the packs contained
11  "400%" or "2000%" bonus gold for a "Limited Time", while having actual
12  knowledge that these quantitative representations were false.

13  43.   For context, gold is the most valuable resource in the game. The
14  average player can expect to earn approximately 1,000–3000 gold per day
15  through in-game labor alone, such as participating in events. However,
16  players usually do not net a surplus of gold per day because they must also
17  spend it, either to progress in the game or to maintain their accounts. Players
18  also require more gold as they level up, and a lack of gold stagnates growth
19  and in fact precludes a player's ability to do almost any task in the game
20  whatsoever.

21  44.   Defendant Warner Bros. promoted these advertisements to
22  induce players to purchase the packs all the while knowing that the packs
23  contained quantitative misrepresentations with respect to the gold value
24  displayed.

25  45.   The amount of gold included in a pack, and whether a gold offer
26  represents an increase in the amount of gold a player could purchase with the
27  corresponding pack, is a material consideration when a player decides
28  whether to purchase that pack.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

46.    Plaintiffs and the Classes reasonably relied on the "strikethrough" pricing when purchasing numerous False Gold Strikethrough Packs. Had Plaintiffs known the "strikethrough" pricing was false, Plaintiffs would not have purchased many of the False Gold Strikethrough Packs that they purchased.

**B.    False Sale Packs**

47.    The False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price. These are described as having a unique value relative to normal packs because of the words "Sale" or "Black Friday Special" or "Fathers' Day Special" prominently displayed. These False Sale Packs communicate to the reasonable GOTC player that the pack contains extra gold and items relative to the normally bi-weekly version of the packs.

48.    For example, the Black Friday Training Pack displays the words "Black Friday Sale." However, this pack is identical in the quantity of both gold and items as a Training Pack that was otherwise in circulation, across all pricing tiers that the two packs were offered in. Therefore, there was no difference whatsoever in the two pack offerings, and the players were not receiving the packs on "sale" in any capacity.

//
//
//
//
//
//
//
//
//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



19    49.    Other False Sale Packs include Father's Day Advanced Building
20  packs, Father's Day Building Enhancement packs, "Flash Sale" Advanced
21  Building packs, and dozens of other packs.

22    50.    Defendant Warner Bros. intentionally designed the packs to
23  mislead players into believing that the packs represented a sale value,
24  including an increase in items and gold, to induce those players to purchase
25  the packs. Defendant Warner Bros. knowingly took those ordinary item packs
26  and simply placed a "Sale" graphic on the ad copies without altering anything
27  else.

28    51.    Defendant Warner Bros. promoted these False Sale Packs from

1  2018 until approximately April 2021. After approximately this period, "Sale"

2  packs generally include about 5,000–10,000 extra gold and a slight increase

3  in items over their normal non-sale counterparts, at the $99 tier.

4          52.    Plaintiffs all reasonably relied on the "Sale" graphics on the False

5  Sale Packs as a material consideration in purchasing those packs. Had the

6  Plaintiffs known the packs were not actually on sale in the manner

7  represented, they would not have purchased the False Sale Packs.

8                              **CLASS ALLEGATIONS**

9          53.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2),

10  and (b)(3), on behalf of themselves and the following proposed "Nationwide

11  Class":

12                  All persons in the United States, within the applicable
13                  statute of limitations, who purchased False Gold
                    Strikethrough Packs or False Sale Packs, and/or such
14                  subclasses as the Court may deem appropriate.

15          54.    Plaintiff Charissa Keebaugh also brings this action on behalf of

16  herself and on behalf of the following class (the "Washington Class"):

17                  All persons in Washington, within the applicable
18                  statute of limitations, who purchased False Gold
                    Strikethrough Packs or False Sale Packs, and/or such
19                  subclasses as the Court may deem appropriate.

20          55.    Plaintiff Stephanie Neveu also brings this action on behalf of

21  herself and on behalf of the following class (the "Arizona Class"):

22                  All persons in Arizona, within the applicable statute of
23                  limitations, who purchased False Gold Strikethrough
                    Packs or False Sale Packs, and/or such subclasses
24                  as the Court may deem appropriate.

25          56.    Plaintiff Heather Mercieri also brings this action on behalf of

26  herself and on behalf of the following class (the "New Hampshire Class"):

27                  All persons in New Hampshire, within the applicable
28                  statute of limitations, who purchased False Gold

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

57.    Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

58.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

59.    This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

60.    Numerosity. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Warner Bros.' books and records. On information and belief, Warner Bros. maintains a list of users that includes personal information for the user including their email addresses, whether they have made in-app purchases, and which in-app purchases they have made.

61.    Applying a reasonable and prudent person standard to the users of Game of Thrones Conquest under the same or similar circumstances, each user would qualify to be a class member requesting the right to cancel and get refunds on their in-app purchases. Any reasonable and prudent person under the same or similar circumstances wants to have the flexibility to

1    disaffirm an in-app purchase that was made while believing that the packs
2    they purchased were part of a sale or promotion but, in reality, were not.

3         62.    Ascertainability. The Classes are ascertainable because their
4    members can be readily identified using business records, and other
5    information kept by Defendant in the usual course of business and within its
6    control or Plaintiffs and the class members themselves. Plaintiffs anticipate
7    providing appropriate notice to the Classes to be approved by the Court after
8    class certification, or pursuant to court order.

9         63.    Commonality and Predominance. This action involves common
10   questions of law and fact, which predominate over any questions affecting
11   individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These
12   include, without limitation:

13             a.    Whether Warner Bros. engaged in the conduct alleged in
14                   this Complaint;

15             b.    Whether Warner Bros. violated the applicable statutes
16                   alleged herein;

17             c.    Whether Warner Bros. designed, advertised, marketed,
18                   distributed, sold, or otherwise placed Game of Thrones
19                   Conquest into the stream of commerce in the United States;

20             d.    Whether Warner Bros.' conduct emanated from the State of
21                   California;

22             e.    Whether Plaintiffs and the class members are injured and
23                   harmed directly by Warner Bros.' false advertising designed
24                   to entice users into making in-app purchases they otherwise
25                   would not have made;

26             f.    Whether Plaintiffs and the class members are entitled to
27                   damages due to Warner Bros.' conduct as alleged in this
28                   Complaint, and if so, in what amounts; and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

g.   Whether Plaintiffs and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

64.   <u>Typicality</u>. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Warner Bros.' wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Warner Bros.' creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

65.   <u>Adequacy</u>. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

66.   <u>Declaratory and Injunctive Relief</u>. Warner Bros. has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2). Warner Bros.' wrongful conduct alleged herein is grounded in the creation and dissemination of Warner Bros.' pack offerings in-game, which are displayed uniformly. Plaintiffs' and the class members' injuries are real, immediate, and ongoing. Plaintiffs and class members seek injunctive and declaratory relief from Warner Bros.

67.   <u>Superiority</u>. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  The damages or other financial detriment suffered by Plaintiffs and putative
2  class members are relatively small compared to the burden and expense that
3  would be required to individually litigate their claims against Warner Bros., so
4  it would be impracticable for members of the proposed Classes to individually
5  seek redress for Defendant's wrongful conduct.

6  68.  Applying the principles of equity or balance of equities, expecting
7  an individual Plaintiff who is at a disadvantage with limited resources and
8  spending capacity, and with minimal negotiating power, if any, to litigate
9  claims against Warner Bros., a multibillion-dollar corporation that has
10 immense resources and deep pockets, would be unfair. Class actions are a
11 necessary and essential means to provide for public interest litigations with
12 checks and balances to curtail deceptive practices by powerful private
13 corporations, including Warner Bros.

14 69.  There is no special interest in class members individually
15 controlling the prosecution of separate actions. And even if class members
16 could afford individual litigation, the court system could not. Individualized
17 litigation creates a potential for inconsistent or contradictory judgments, and
18 it increases the delay and expense to all parties and the court system. By
19 contrast, the class action device presents far fewer management difficulties
20 and provides the benefits of single adjudication, economy of scale, and
21 comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

22 **CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

23 70.  California's substantive laws apply to every class member,
24 regardless of where in the United States the class member resides.

25 71.  Warner Bros. purports to bind GOTC's players to its Terms. While
26 Plaintiffs contend these Terms fail to create a binding agreement with the
27 players, the Terms require that any dispute be interpreted under California
28 law. Thus, regardless of whether the Terms are binding, Warner Bros. has

1    evidenced a clear intent to subject itself to California law.

2    72.    California's substantive laws may be constitutionally applied to the
3    claims of Plaintiffs and the Classes under the Due Process Clause, 14th
4    Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S.
5    Constitution. California has significant contacts, or significant aggregation of
6    contacts, to the claims asserted by Plaintiffs and all class members, thereby
7    creating state interests that ensure that the choice of California state law is
8    not arbitrary or unfair.

9    73.    Warner Bros.' United States headquarters and principal place of
10   business is located in California. Warner Bros. also owns property and
11   conducts substantial business in California. Therefore, California has an
12   interest in regulating Warner Bros.' conduct under its laws. Warner Bros.'
13   decision to reside in California and avail itself of California's laws, and to
14   engage in the challenged conduct from and emanating out of California,
15   renders the application of California law to the claims herein constitutionally
16   permissible.

17   74.    California is also the state from which Warner Bros.' alleged
18   misconduct and false statements emanated. This conduct similarly injured
19   and affected Plaintiffs and all other class members.

20   75.    The application of California laws to the Classes is also
21   appropriate under California's choice of law rules because California has
22   significant contacts to the claims of Plaintiffs and the proposed Classes, and
23   California has a greater interest in applying its laws here than any other
24   interested state.

25   //

26   //

27   //

28   //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**FIRST CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code §17200 *et seq.***

**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

76.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

77.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

78.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

79.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

81.    Warner Bros. has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

82.    The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes—similar to Warner Bros.' False Sale Packs and False Gold Strikethrough Packs in all material respects—as deceptive practices that would violate the FTC Act.

83.    16 C.F.R.§233.1 states:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction— the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

84.    California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code §17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was

the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

85. As further detailed in the Second Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* §(a)(13)

86. The False Gold Strikethrough Packs violate the unlawful prongs of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. & Prof. Code §17501, Cal. Civ. Code §§1770(a)(9) and (a)(13).

87. The False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price.

88. Warner Bros.' use of the False Sale Packs violates 15 U.S.C. §45(a)(1), 15 U.S.C. §52(a), and the FTC Guidelines published in Title 16, Code of Federal Regulations, Section 233.

89. It also violated and continues to violate Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §1770, sections (a)(9) and (a)(13), by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months preceding the publication and dissemination of advertisements containing the false former prices.

90. Warner Bros. has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced "original" former price of its False Gold Strikethrough Packs where, in fact, Warner Bros. set an arbitrary price for the goods contained in these packs

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   and then falsely pretended the packs had ever been offered for sale without
2   their "limited time bonus" contents.

3       91.   Additionally, Warner Bros. has violated the "unfair" prong of the
4   UCL by falsely representing that its False Sale Packs contained unique, time-
5   sensitive discounts when, in fact, they contained the same resources and in-
6   game items as other packs not connected with specific sales events (*e.g.*,
7   Black Friday).

8       92.   These acts and practices are unfair because they were likely to
9   cause consumers to falsely believe that Warner Bros. was offering value,
10  discounts, or bargains from the prevailing market value or worth of the
11  products sold that do not, in fact, exist. As a result, purchasers (including
12  Plaintiffs) reasonably understood that they were receiving valuable price
13  reductions on purchases of in-game items. This, in turn, has induced
14  reasonable purchasers to buy such products from Warner Bros. that they
15  would not have otherwise purchased.

16      93.   The gravity of the harm to Plaintiffs and members of the Classes
17  resulting from these unfair acts and practices outweighs any conceivable
18  reasons, justifications, or motives that Warner Bros. may have had for
19  engaging in such deceptive acts and practices.

20      94.   Additionally, Warner Bros. has violated the "fraudulent" prong of
21  the UCL because its marketing and advertising materials included false
22  "original" prices for its False Gold Strikethrough Packs, and because these
23  same materials also suggested that the offers in the False Sale Packs were
24  unique, limited, and would no longer be available at those price points
25  following the conclusion of its sale events. In actuality, the packs never
26  contained the "limited time" deals they purported to offer.

27      95.   Warner Bros.' acts and practices deceived Plaintiffs and the
28  Classes at large. Specifically, Plaintiffs and the Classes relied on these

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   misleading and deceptive representations regarding the limited-time bonuses
2   they could expect to receive in the packs. Each of these representations and
3   deceptions played a substantial role in Plaintiffs' decisions to purchase the
4   packs, and Plaintiffs would not have done so in the absence of such
5   representations.

6       96.   Plaintiffs and the Classes never received the benefit of their
7   bargains with Warner Bros., in that the "discounted" resources offered for sale
8   in the packs did not give them the anticipated competitive edge against their
9   opponents. Competitors could simply purchase packs at the same false sale
10  pricing after the alleged sales expired, notwithstanding the representation that
11  these were limited-time offers.

12      97.   Similarly, players who purchased the False Sale Packs and the
13  False Gold Strikethrough Packs defensively (to protect against becoming
14  overpowered by opponents who they believed had been able to take
15  advantage of the purportedly limited-time bonuses) were deprived of the
16  benefit of their bargains, because the threat itself was a fabrication. There
17  was never a risk of falling behind due to a player's failure to purchase items
18  at their discounted price, because the price was always discounted.

19      98.   As a result of these violations under each of the fraudulent, unfair,
20  and unlawful prongs of the UCL, Defendant has been unjustly enriched at the
21  expense of Plaintiffs and members of the proposed Classes. Specifically,
22  Warner Bros. has been unjustly enriched by obtaining revenues and profits
23  that it would not otherwise have obtained absent its false, misleading, and
24  deceptive conduct

25      99.   Through its unfair acts and practices, Warner Bros. has
26  improperly obtained money from Plaintiffs and the class members. As such,
27  Plaintiffs request that this Court cause Warner Bros. to restore this money to
28  Plaintiffs and all class members, and to enjoin Warner Bros. from continuing

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  to violate the UCL, and/or from violating the UCL in the future. Otherwise,

2  Plaintiffs, the class members, and members of the general public may be

3  irreparably harmed and/or denied an effective and complete remedy if such

4  an order is not granted.

**SECOND CLAIM FOR RELIEF**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Business & Professional Code §17500 *et seq.***

**(By Plaintiffs, individually and on behalf of the Nationwide Class)**

9     100.  Plaintiffs incorporate by reference all allegations in this Complaint

10  and restate them as if fully set forth herein.

11     101.  The FAL prohibits unfair, deceptive, untrue, or misleading

12  advertising, including, but not limited to, false statements as to worth, value,

13  and former price.

14     102.  Furthermore, the FAL provides that: "No price shall be advertised

15  as a former price of any advertised thing, unless the alleged former price was

16  the prevailing market price as above defined within three months next

17  immediately preceding the publication of the advertisement or unless the date

18  when the alleged former price did prevail is clearly, exactly and conspicuously

19  stated in the advertisement." Cal. Bus. & Prof. Code §17501.

20     103.  The False Gold Strikethrough Packs and the False Sale Packs

21  misrepresent the existence of a sale whereby players can allegedly purchase

22  more items and gold from a pack than they normally could for the same price.

23     104.  Through its unfair acts and practices, Warner Bros. has

24  improperly obtained money from Plaintiffs and the class members. As such,

25  Plaintiffs request that this Court cause Warner Bros. to restore this money to

26  Plaintiffs and all class members, and to enjoin Warner Bros. from continuing

27  to violate the FAL, and/or from violating the FAL in the future. Otherwise,

28  Plaintiffs, the class members, and members of the general public may be

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  irreparably harmed and/or denied an effective and complete remedy if such
2  an order is not granted.

### THIRD CLAIM FOR RELIEF

### Violation of the California Consumers Legal Remedies Act ("CLRA")

### Cal. Civ. Code. §1750 *et seq.*

### (By Plaintiffs, individually and on behalf of All Classes)

7  105.  Plaintiffs incorporate by reference all allegations in this Complaint
8  and restate them as if fully set forth herein.

9  106.  Plaintiffs and the other class members are consumers within the
10  meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within
11  the meaning of Cal. Civ. Code §§1761(e) and 1770.

12  107.  Defendant is a "person" within the meaning of Cal. Civ. Code
13  §§1761(c) and 1770 and sells "goods or services" within the meaning of Cal.
14  Civ. Code §§1761(b) and 1770.

15  108.  GOTC and the in-app purchases are a "good" or "service" within
16  the meaning of Cal. Civ. Code. §§1761(a) and (b).

17  109.  Warner Bros. has violated §1770(a)(13)'s proscription against
18  making false or misleading statements of fact concerning reasons for,
19  existence of, or amounts of, price reductions by misrepresenting the existence
20  of gold discounts via False Gold Strikethrough Packs and misrepresenting the
21  existence of holiday sales through its False Sale Packs.

22  110.  Plaintiffs and the other class members suffered actual damages
23  as a direct and proximate result of Warner Bros.' actions, concealment, and/or
24  omissions in the advertising, marketing, and promotion of its bait apps, in
25  violation of the CLRA, as evidenced by the substantial sums Warner Bros.
26  pocketed.

27  111.  Plaintiffs, on behalf of themselves and the class members,
28  demand judgment against Warner Bros. for injunctive relief and attorney's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    fees.

2                          **FOURTH CLAIM FOR RELIEF**

3                                    **Fraud**

4           **(By Plaintiffs, individually and on behalf of All Classes)**

5           112.  Plaintiffs incorporate by reference all allegations in this Complaint

6    and restate them as if fully set forth herein.

7           113.  Defendant represented to all Plaintiffs that various purchased

8    packs were on sale in that they gave a higher amount of gold than normal,

9    that holiday or "sale" versions of the packs were not identical in item quantities

10   to their normal counterparts, and that pack purchases bestowed a certain

11   outcome upon purchase.

12          114.  These representations were false because the packs were never

13   offered with smaller amounts of gold; the "sale" versions of the packs were

14   identical to their normal counterparts.

15          115.  Defendant designed the graphical images on the advertisements

16   in a way that intentionally attracted Plaintiffs to the enticing but false claims

17   regarding gold amounts and the existence of sales

18          116.  Plaintiffs reasonably relied upon the claims made in the

19   advertisements in deciding to purchase the aforementioned packs.

20          117.  Upon purchasing the packs, Plaintiffs were harmed because, had

21   Plaintiffs known the claims were false, they would not have made those

22   purchases.

23          118.  Plaintiffs' reliance on Defendant's misrepresentations in its pack

24   advertisements was a substantial factor in causing harm to Plaintiffs.

25          119.  Defendant's conduct has therefore caused and is causing

26   immediate and irreparable injury to Plaintiffs and the class members and will

27   continue to both damage Plaintiffs and the class members and deceive the

28   public unless enjoined by this Court.

**FIFTH CLAIM FOR RELIEF**

**Negligent Misrepresentation**

**(By Plaintiffs, individually and on behalf of All Classes)**

120.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

121.  Defendant represented to all Plaintiffs that various purchased packs were on sale in that they gave a higher amount of gold than normal and that holiday or "sale" versions of the packs were not identical in item quantities to their normal counterparts.

122.  These representations were false because the packs were never offered with smaller amounts of gold and the "sale" versions of the packs were identical to their normal counterparts.

123.  Defendant designed the graphical images on the advertisements in a way that intentionally attracted Plaintiffs to the enticing but false claims regarding gold amounts and the existence of sales.

124.  Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

**SIXTH CLAIM FOR RELIEF**

**Violation of New Hampshire's Regulation of Business Practices for Consumer Protection Act**

**(By Plaintiff Heather Mercieri, individually, and on behalf of the New Hampshire Class)**

125.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

126.  In the alternative, or to the extent California law does not apply, Plaintiff Heather Mercieri brings this Count on behalf of herself and the New

Hampshire Class.

127. New Hampshire's Regulation of Business Practices for Consumer Protection, §358-A:1, is also known as the state's Consumer Protection Act.

128. Warner Bros. qualifies as a "Person" under §358-A:1 of the Act.

129. §358-A:2(VII) prohibits "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

130. §358-A:2(IX) prohibits "Advertising goods or services with intent not to sell them as advertised."

131. §358-A:2(XI) prohibits "Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."

132. Warner Bros. violated (VII), (IX), and (XI) of §358-A:2 by advertising False Gold Strikethrough Packs and False Sale Packs, which Plaintiffs purchased.

133. Plaintiff Heather Mercieri and the New Hampshire Class were injured by Warner Bros.' violations because, if not for Warner Bros.' deceptive representations that the packs contained increased amounts of gold than normally offered, and that the packs contained more items than usual because of holiday sales, Plaintiffs would not have made the purchases.

134. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## SEVENTH CLAIM FOR RELIEF

**Violation of Washington's Consumer Protection Act (RCW 19.86.020)**

**(By Plaintiff Charissa Keebaugh, individually, and on behalf of the Washington Class)**

135. Plaintiffs incorporate by reference all allegations in this Complaint

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

and restate them as if fully set forth herein.

136. Plaintiff Charissa Keebaugh hereby brings this Claim, under Washington's Consumer Protection Act, Revised Code of Washington ("RCW") 19.86.020, against Warner Bros. on behalf of herself and the Washington Class.

137. Defendant Warner Bros. engages in acts and practices that had or have the capacity to deceive substantial portions of the public, during trade or commerce.

138. Warner Bros.' marketing of its False Gold Strikethrough Packs and False Sale Packs had the capacity to deceive substantial portions of the public because Warner Bros.' advertisements create the illusion of sales and/or discounts with respect to their False Gold Strikethrough Packs and False Sale Packs.

139. Defendant's deceptive advertising acts and practices significantly affected the public interest as thousands of consumers made purchases based on the representations in the advertisements.

140. Defendant's practices brought injury to Plaintiffs in that they made purchases they otherwise would not have made.

141. There is causation between the deceptive advertising and the injury suffered by Plaintiffs because, if not for Defendant's deceptive claims made in the advertisements of False Gold Strikethrough Packs and False Sale Packs, Plaintiffs would not have purchased those packs.

142. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

//

//

### III.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B.    Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C.    Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D.    For punitive damages;

E.    For civil penalties;

F.    For declaratory and equitable relief, including restitution and disgorgement;

G.    For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

I.    Awarding Plaintiffs and the class members reasonable attorney's fees and costs as allowable by law;

J.    Specifically awarding Plaintiffs and the class members reasonable attorney's fees and costs, as well as injunctive relief, pursuant to the CLRA;

K.    Awarding pre-judgment and post-judgment interest; and

L.    Granting any other relief as this Court may deem just and proper.

//

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

## IV.   JURY TRIAL DEMANDED

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4

Respectfully Submitted,

5

DATED: February 24, 2022          **KRONENBERGER ROSENFELD, LLP**

6

7

By: s/Karl S. Kronenberger

8

Karl S. Kronenberger
karl@KRInternetLaw.com

9

Katherine E. Hollist *(Pro hac vice*

10

*forthcoming)*
kate@KRInternetLaw.com

11

150 Post Street, Suite 520

12

San Francisco, CA 94108
Telephone: (415) 955-1155

13

14

**POLLOCK COHEN LLP**

15

Raphael Janove
rafi@pollockcohen.com

16

Adam Pollock

17

adam@pollockcohen.com
60 Broad St., 24th Fl.

18

New York, NY 10004

19

Telephone: (212) 337-5361
*Pro hac vice forthcoming*

20

21

**JAY KUMAR LAW**

22

Jay Kumar
jay@jaykumarlaw.com

23

73 W. Monroe Street, Suite 100

24

Chicago, IL 60603
Telephone: (312) 767-7903

25

*Pro hac vice forthcoming*

26

*Attorneys for Plaintiffs and the*

27

*Proposed Classes*

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108