**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@KRInternetLaw.com
Katherine E. Hollist (Admitted *pro hac vice*)
kate@KRInternetLaw.com
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

| | |
|---|---|
| **JAY KUMAR LAW** | **POLLOCK COHEN LLP** |
| Jay Kumar (Admitted *pro hac vice*) | Raphael Janove (Admitted *pro hac vice*) |
| jay@jaykumarlaw.com | rafi@pollockcohen.com |
| 73 W. Monroe Street, Suite 100 | Adam Pollock (Admitted *pro hac vice*) |
| Chicago, IL 60603 | adam@pollockcohen.com |
| Telephone: (312) 767-7903 | 60 Broad St., 24th Fl. |
| | New York, NY 10004 |
| | Telephone: (212) 337-5361 |

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **CHARISSA KEEBAUGH, STEPHANIE NEVEU, HEATHER MERCIERI, SOPHIA NICHOLSON,** and **P.W.**, by and through his Guardian **JOIE WEIHER**; on behalf of themselves and all others similarly situated, | Case No. 2:22-cv-01272 |
| | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| **WARNER BROS. ENTERTAINMENT INC.,** a Delaware corporation, | |
| Defendant. | |

Case No. 2:22-cv-01272                                        **CLASS ACTION COMPLAINT**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   Plaintiffs P.W., by and through his Guardian Joie Weiher (the "Minor
2   Plaintiff"), and Charissa Keebaugh ("Keebaugh"), Stephanie Neveu
3   ("Neveu"), Heather Mercieri ("Mercieri"), and Sophia Nicholson ("Nicholson")
4   (collectively with the Minor Plaintiff, "Plaintiffs"), on behalf of themselves and
5   all others similarly situated, by and through their attorneys, for their Complaint
6   against Warner Bros. Entertainment Inc. ("Defendant" or "Warner Bros.")
7   allege, on knowledge as to their own actions, the investigation of Plaintiffs'
8   counsel, and otherwise upon information and belief, as follows:

9   **PRELIMINARY STATEMENT**

10   1.   This is a class action lawsuit against Warner Bros. for falsely
11   advertising price discounts for in-game purchases in its mobile application
12   game (or "app"), Game of Thrones Conquest ("GOTC"). GOTC has spent 105
13   weeks as one of the top 25 highest grossing applications on Apple's App
14   Store, and is the number three highest grossing strategy game across both
15   Apple and Android devices, with over 20 million downloads and approximately
16   300,000 active users as of December 2020.

17   2.   GOTC has generated over $750 million in revenue since its 2017
18   inception by offering players "microtransactions"—the ability, while in the
19   game, to make discrete in-app purchases of gold, building material, crafting
20   material, armor, and other valuables necessary to level up one's account.
21   These in-app purchases, most frequently in the form of "packs," range in price
22   from $0.99 to $99.99 each.

23   3.   However, in its direct marketing to consumers (including
24   representations made at the time of purchase), Warner Bros. advertises false
25   former prices for these packs to induce players into believing they must act
26   quickly to take advantage of a limited-time sale price.

27   4.   For years, Warner Bros. has deceived consumers by offering
28   specific limited-time "bonuses" that purported to massively discount the price

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

of its in-game goods. It uses strikethrough pricing and statements like "Limited Time! 2000% Bonus Gold!" or "Black Friday Sale" to trick consumers into believing they were benefitting from limited-time promotions that substantially increased the value of their in-game purchases, especially in relation to purchases made by competing players. These purported savings were false, however, because the original pricing that these ads referenced are fabricated.

5.      These advertisements have run for years. But at no point, let alone within three months of the advertised discounts, have these in-game items ever been actually offered at a non-discounted price—*i.e.*, **without** their "limited time" bonuses. In other words, Warner Bros. never sells these items at their "original" price. It just offers false discounts from an original price that did not exist, and its players bought packs on "sale" that were the same prices they would ordinarily pay.

6.      Furthermore, the advertised "original" pricing does not reflect the prevailing market retail pricing for these virtual in-game items, which have no real-world value and whose pricing is entirely determined by Warner Bros.

7.      The Federal Trade Commission ("FTC") describes false former pricing schemes as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

> enabling the subsequent offer of a large reduction –
> the "bargain" being advertised is a false one; the
> purchaser is not receiving the unusual value he
> expects.

16 C.F.R. §233.1(a).

8.     California statutory and regulatory law also expressly forbid such pricing schemes. Specifically, Cal. Bus. & Prof. Code §17501 states:

> No price shall be advertised as a former price of any
> advertised thing, unless the alleged former price was
> the prevailing market price as above defined within
> three months next immediately preceding the
> publication of the advertisement or unless the date
> when the alleged former price did prevail is clearly,
> exactly and conspicuously stated in the
> advertisement.

9.     Defendant knows, or should reasonably have known, that its comparative price advertising is false, deceptive, misleading, and unlawful.

10.    Defendant has fraudulently concealed from and intentionally failed to disclose to Plaintiffs and the putative class members the truth about its advertised price discounts and former prices.

11.    Through this false and deceptive marketing, advertising, and pricing scheme, Warner Bros. has violated California law prohibiting the advertisement of goods for sale as discounted from false former prices, and prohibiting misleading statements about the existence and amount of price reductions.

12.    The claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

13.    Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Warner

Bros. is situated.

14.    Plaintiffs, individually and on behalf of all others similarly situated, hereby seek restitution, injunctive relief, punitive damages, attorney's fees, and all other relief which the Court may deem appropriate.

## JURISDICTION

15.    This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

16.    This Court has personal jurisdiction over Warner Bros. Entertainment Inc., because its principal place of business is in Burbank, California, it conducts substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District.

## VENUE

17.    Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

18.    In addition, venue is proper in this District under 28 U.S.C. §1391(b)(1) and §1391(b)(3), in that Defendant resides in this District and is subject to this Court's personal jurisdiction.

## PARTIES

19.    Plaintiff Charissa Keebaugh is an individual who resides in Vancouver, Washington. She began playing GOTC during May of 2020, having downloaded the game from the Apple App Store. She purchased several False Gold Strikethrough packs (defined below), which she otherwise would not have purchased had she known about the deceptive advertising

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 which she reasonably relied upon in making those purchases.

2 20. Plaintiff Stephanie Neveu is a resident of Waddell, Arizona. She

3 began playing GOTC during June 2019. Ms. Neveu purchased numerous

4 False Gold Strikethrough packs and False Sale Packs (defined below) from

5 June or July 2019 until October 2021, which she otherwise would not have

6 purchased had she known about the deceptive advertising which she

7 reasonably relied upon in making those purchases.

8 21. Plaintiff Heather Mercieri is a resident of Dover, New Hampshire.

9 She began playing GOTC during July 2018. She purchased False Gold

10 Strikethrough Packs and False Sale Packs, which she otherwise would not

11 have purchased had she known about the deceptive advertising which she

12 reasonably relied upon in making those purchases.

13 22. Plaintiff Sophia Nicholson is a resident of New York, New York.

14 She began playing GOTC around June 2020. She purchased False Gold

15 Strikethrough Packs and False Sale Packs, which she otherwise would not

16 have purchased had she known about the deceptive advertising which she

17 reasonably relied upon in making those purchases.

18 23. Minor Plaintiff P.W., and his Guardian Joie Weiher, are residents

19 of Virginia. Minor Plaintiff P.W. purchased False Gold Strikethrough Packs

20 and False Sale Packs, which he otherwise would not have purchased had he

21 known about the deceptive advertising which he reasonably relied upon in

22 making those purchases.

23 24. Upon information and belief, Defendant Warner Bros.

24 Entertainment Inc. is a corporation that is incorporated in Delaware and has

25 its principal place of business in Burbank, California.

26 **FACTS**

27 25. GOTC is a mobile application strategy game developed by

28 Defendant Warner Brothers Entertainment, Inc., available on iPhone and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Android devices through the Apple App Store and Google Play platforms, respectively. GOTC is based upon the HBO television series "Game of Thrones" and the "A Song of Ice and Fire" book series by George R.R. Martin.

26.    GOTC has spent 105 weeks as one of the top 25 highest grossing applications on Apple's App Store, and was the number three highest grossing strategy game across both Apple and Android devices, with over 20 million downloads and approximately 300,000 active users, as of December 2020.

27.    Though it is free to initially download, GOTC has generated over $750 million in revenue since its 2017 inception. It makes this revenue by offering players "microtransactions," or discrete in-app purchases to help players advance in the game. These purchases include gold, building material, crafting material, armor, and other valuables, and the add-ons are necessary to level up one's account. An "in-app purchase" refers to a financial transaction initiated from within the mobile application itself. These in-app purchases, or "packs," range in price from $0.99 to $99.99 each.

28.    Once a player creates an account and starts playing, she is able to begin upgrading the level of her "Keep," or castle, and the buildings within it. She does this to strengthen her combat abilities and therefore maintain a competitive position in the coming battles for Seats of Power.

29.    In order to progress past a certain level in the game, it is necessary to purchase in-app "packs" that contain gold, building materials, crafting materials, research materials, dragon food, upgrade speed-ups, bubble shields, teleports, and other items that are essential to progress in the game. These essential items require spending real money, as they are otherwise only available in insufficient amounts through in-game labor alone.

30.    After a few days of playing and regularly making upgrades, the costs to purchase materials to make subsequent upgrades suddenly increase

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

exponentially. For example, the cost of upgrading one's Keep to level 8 is only approximately 5,000 wood and 5,000 food. But shortly after, the cost of upgrading a Keep from level 29 to level 30 is astronomical in comparison, requiring nearly 900 million wood, 900 million food, 75 million stone, 23 million iron, 90,000 brick, 24,000 soldier pine, and 11,000 keystones. Acquiring the rare resources necessary to make this upgrade alone would cost approximately $600 in Advanced Building Packs, and a player must upgrade several other buildings in their Keep at a similar cost in order to grow this Keep level.

31.     These upgrades all cost gameplayers significant, real currency. The packs necessary for these upgrades each have a version that is offered at $99.99, $49.99, $19.99, $9.99, $4.99, and $0.99. The advertisements for a particular pack at different pricing levels are identical in all respects except cheaper levels display and contain less gold and resources. However, progressing one's Keep to level 35, the maximum level, requires approximately over $25,000 in pack purchases, assuming perfectly optimal purchasing decisions and maximizing items obtained only through gameplay.

32.     Each and every time a player logs into the game, a pop-up advertisement for a $99.99 pack fills the entire screen, prompting the player to either accept the purchase or close the advertisement by clicking an "X" in the corner to continue playing the game.

33.     Each and every displayed pack, whether located on the login pop-up ad, or on the right corner, has an hourglass timer counting down the time that the pack is still available, from the maximum of 59 minutes to a minimum of one second.

34.     The hourglass timer creates a sense of urgency and scarcity to induce a player to purchase a pack immediately.

35.     The pack advertisements consist of a graphical image which has,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

in writing, a name of the pack. The graphical image also contains any relevant descriptions of sales or special offers in which a higher quantity of items is offered for the same price compared to normal versions of those packs.

36.     However, these advertisements are actually false, deceptive, and intended to mislead players into making in-app purchases that they otherwise would not have made. Defendant falsely promotes these packs as being on sale or discounted by misrepresenting that such packs include limited-time bonuses that purport to substantially increase the value of the packs. Since the game pits players against each other, there is significant pressure on players to take advantage of these limited-time offerings so that they can gain a competitive edge against opponents who presumably are left to pay full price.

37.     Additionally, the advertisements mislead players into believing they will find themselves at a competitive *disadvantage* if they do not purchase packs now, since they will be left paying full price for items their opponents were able to purchase at a discount.

38.     Warner Bros. uses false reference pricing schemes to increase sales because they know these reference prices influence purchasing decisions, as consumers want bargains. Fake discounting and false reference prices are widely recognized to be powerful tools in convincing customers to make purchases, and this issue has been studied repeatedly. As one recent research study from the Harvard Business School summarized:

> Taken together, evidence from our analysis of observational transaction data and our laboratory experiment suggests that fake prices provide sellers with a powerful tool to enhance demand, but one that may come at the expense of misleading consumers about products' true initial selling prices. Consumers take initial prices as signals of product quality and rate offers as being better deals the higher these initial

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

prices are with respect to present selling prices. Accordingly, fake prices have the highest influence on purchase likelihood for less-informed consumers.[1]

. . .

By definition, a fake price offers a fake discount—a discount that does not represent a decrease from some previous selling price but, rather, the difference between the current selling price and a fake introductory price. There is much existing literature on the impact of discounts on consumer behavior beyond

. . .

39.     Warner Bros.'s use of false discounting is particularly effective in influencing purchasing decisions because GOTC, like other freemium games, is already highly addictive. As an editorial in the Society for the Study of Addiction has observed:[2]

Predatory monetization schemes in video games are purchasing systems that disguise or withhold the long-term cost of the activity until players are already financially and psychologically committed. Such schemes contribute to the increasing similarity of gaming and gambling and the potential for financial harm for those with Internet gaming disorder.

. . .

Game monetization schemes have become increasingly sophisticated and have been featured more prominently within popular on-line games. In our view, some of these schemes could be considered predatory. Predatory monetization schemes typically involve in-game purchasing systems that disguise or withhold the true long-term cost of the activity until players are already financially and psychologically committed. Such schemes are designed to encourage

---

[1] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail,* Harvard Business School Working Paper (2018) (available at https://www.hbs.edu/ris/Publication%20Files/18-113_16977967-84c0-488d-96e5-ffba637617d9.pdf)

[2] https://onlinelibrary.wiley.com/doi/epdf/10.1111/add.14286 (Nov. 27, 2018).

repeated player spending using tactics or elements that may involve, either singularly or in combination, limited disclosure of the product; intrusive and unavoidable solicitations; and systems that manipulate reward outcomes to reinforce purchasing behaviors over skillful or strategic play. Such strategies may exploit inequalities in information between purchaser and provider, such as when the industry uses knowledge of the player's game-related preferences, available funds and/or playing and spending habits, to present offers predetermined to maximize the likelihood of eliciting player spending.

40.    There are two primary categories of deceptive pack advertisements: (a) packs that offer the illusion of gold discounts through the strikethrough graphics, hereafter referred to as "False Gold Strikethrough Packs," and (b) packs that falsely advertise that a pack contains extra value by virtue of being on sale because of a holiday or as part of some other event, hereafter referred to as "False Sale Packs." Any deceptively advertised pack can belong to more than one of these categories simultaneously, or may be deceptive for a separate reason outside of the ones belonging to the two main categories.

## A.    False Gold Strikethrough Packs

41.    The False Gold Strikethrough Packs display a small amount of gold, with a strikethrough line, and then in bold typeface display a larger amount of gold, implying that the pack once formerly contained the smaller amount of gold. For example, a $99.99 pack may have "10,000" gold with a strikethrough line over that number, and display in bigger, bolder letters "120,000" gold. The intended message is that the pack formerly contained 10,000 gold but now is equipped with 120,000 gold, making it significantly more valuable.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

42.    However, these packs were in fact never offered for the smaller amount of gold at all.



KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



43.    There are dozens of False Gold Strikethrough Packs sold at the $99.99 price tier, including: Dragon Research Packs, Advanced Building Packs, Advanced Teleport Packs, Troop Training Boost Packs, Enhancement Packs, Crafting Materials Packs, and several more types of packs. None of these packs were ever offered with 10,000 gold at the $99.99 pricing tier despite having "10,000" struck through on the graphics of their respective ad copies.

44.    All of the above packs were offered at the $49.99 price tier as well. Among those packs, the struck through value was 5,000 gold next to a larger gold amount in bold. However, these packs were also never previously offered with 5,000 gold.

45.    Similarly, all of the above packs were also offered in the smaller pricing tiers of $19.99, $9.99, $4.99, and $0.99—all with identical ad copies

1   with the gold amounts correspondingly smaller in both the strikethrough

2   portion and the bolder typeface. However, in all cases the smaller

3   strikethrough price was never previously offered.

4       46.   Defendant Warner Bros. had actual knowledge that the False

5   Gold Strikethrough Packs contained false or misleading misrepresentations

6   as to their prior gold values. Warner Bros. specifically represented in

7   advertising the False Gold Strikethrough Packs that the packs contained

8   "400%" or "2000%" bonus gold for a "Limited Time", while having actual

9   knowledge that these quantitative representations were false. Warner Bros.

10  designed and promoted these advertisements from 2018 until present day,

11  where the practice of offering these deceptive packs continues.

12      47.   For context, gold is the most valuable resource in the game. The

13  average player can expect to earn approximately 1,000–3,000 gold per day

14  through in-game labor alone, such as participating in events. However,

15  players usually do not net a surplus of gold per day because they must also

16  spend it, either to progress in the game or to maintain their accounts. Players

17  also require more gold as they level up, and a lack of gold stagnates growth

18  and in fact precludes a player's ability to do almost any task in the game

19  whatsoever.

20      48.   Defendant Warner Bros. promotes these advertisements to

21  induce players to purchase the packs all the while knowing that the packs

22  contained quantitative misrepresentations with respect to the gold value

23  displayed.

24      49.   The amount of gold included in a pack, and whether a gold offer

25  represents an increase in the amount of gold a player could purchase with the

26  corresponding pack, is a material consideration when a player decides

27  whether to purchase that pack.

28      50.   Plaintiffs and the Classes reasonably relied on the "strikethrough"

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  pricing when purchasing numerous False Gold Strikethrough Packs. Had
2  Plaintiffs known the "strikethrough" pricing was false, Plaintiffs would not have
3  purchased many of the False Gold Strikethrough Packs that they purchased.

4  **B.  False Sale Packs**

5  51.  The False Sale Packs misrepresent the existence of a sale
6  whereby players can allegedly purchase more items and gold from a pack
7  than they normally could for the same price. These are described as having
8  a unique value relative to normal packs because of the words "Sale" or "Black
9  Friday Special" or "Father's Day Special" prominently displayed. These False
10 Sale Packs communicate to the reasonable GOTC player that the pack
11 contains extra gold and items relative to the normally bi-weekly version of the
12 packs.

13 52.  For example, the Black Friday Training Pack displays the words
14 "Black Friday Sale." However, this pack is identical in the quantity of both gold
15 and items as a Training Pack that was otherwise in circulation, across all
16 pricing tiers that the two packs were offered in. Therefore, there was no
17 difference whatsoever in the two pack offerings, and the players were not
18 receiving the packs on "sale" in any capacity.

19
20
21
22
23
24
25
26
27
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



15

**CLASS ACTION COMPLAINT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



53.    Other False Sale Packs include Father's Day Advanced Building packs, Father's Day Building Enhancement packs, "Flash Sale" Advanced Building packs, and dozens of other packs.

54.    Defendant Warner Bros. intentionally designed the packs to mislead players into believing that the packs represented a sale value, including an increase in items and gold, to induce those players to purchase the packs. Defendant Warner Bros. knowingly took those ordinary item packs

1   and simply placed a "Sale" graphic on the ad copies without altering anything
2   else.

3      55.   Defendant Warner Bros. has been promoting these False Sale
4   Packs from 2018 through the present day.

5      56.   Plaintiffs all reasonably relied on the "Sale" graphics on the False
6   Sale Packs as a material consideration in purchasing those packs. Had the
7   Plaintiffs known the packs were not actually on sale in the manner
8   represented, they would not have purchased the False Sale Packs.

9   **C.   Effect on Minors**

10     57.   This system of False Sale Packs and False Gold Strikethrough
11  Packs was intentionally created to capitalize on and encourage addictive
12  behaviors by fabricating an illusion of scarcity and urgency. Minors are
13  especially susceptible to these elements of the game's design. The
14  experience of obtaining "limited" and "discounted" in-game items holds a
15  strong appeal for minors and reinforces their desire to keep playing and
16  spending money.

17     58.   Warner Bros. specifically targets minors with its advertisements.
18  To this day, the game is advertised in the Apple App Store and on Google
19  Play as for players aged "12+:"

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



59.     After advertising to and then recruiting players who are minors, Warner Bros then induces these minors to make in-game purchases by promoting its False Sale Packs and False Gold Strikethrough Packs.

60.     Minors make their in-game purchases without understanding the amounts involved in terms of actual money spent to date, that week, or that month. Warner Bros does not allow players to see the total amount they have spent on the game. As the Society for the Study of Addiction notes, "[y]ounger players may be particularly less equipped to critically appraise the value proposition of these [in-game purchase] schemes."

61.     As seen in the above screenshots, nothing at the time of purchase indicates that the purchase will be non-refundable, and minors are generally unaware of the non-refundability of these purchases. Minor Plaintiffs and Class members are not buyers who would look for refund policy options at the

1    time of purchase.

2        62.    Warner Bros. induces in-game purchases by allowing one-click

3    purchase options within GOTC.

4        63.    It further induces frequent in-game purchases by pushing newer

5    content every week, and comprehensive updates with limited-time events.

6    Any purchase already made quickly becomes stale. Minor players are

7    induced to make purchases to keep up with their peers on whatever the

8    current trend or fad may be.

9        64.    In short, Warner Bros. does not give minors enough information

10   to make reasonable and prudent choices with their in-game purchases.

11       65.    The game nevertheless fails to provide any right to obtain refunds

12   of any in-game purchases made by minors.

13       66.    Minors make these purchases using their parents' credit and debit

14   cards, as stored on the gaming platforms. In many instances, a minor's parent

15   or guardian may not review their credit cards, debit cards, and/or bank

16   account information until months after the purchases occurred and thus would

17   not know of the amounts spent at the time of purchase.

18       67. P.W., a minor, used his parents' credit card to make

19   approximately $6,200 in in-app purchases on GOTC in a short three-week

20   period. His aim in making the purchases was to take advantage of what he

21   believed were special deals among the pack offerings to enhance his account

22   and thus be more useful to his clanmates.

23       68.    His parents heavily monitored his phone usage and only allowed

24   him access to one app, Game of Thrones Conquest, because they believed,

25   based on Warner Bros.'s representations, that it was safe for kids 12 and over.

26   Despite their vigilance, P.W. quickly bought dozens and dozens of packs.

27   After his parents found out, they restricted his phone usage and prevented

28   him from playing GOTC or using any other apps.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

69.   Despite these efforts, P.W. and his parents were unable to obtain a refund, despite the fact that he has a legal right to disaffirm a contract and obtain refunds on any in-app purchase.

70.   Warner Bros. misrepresents this right by claiming that all purchases are final and non-refundable, without making any allowances for minors, specifically to deter minor players and their parents from exercising these rights to obtain refunds.

71.   Upon information and belief, Warner Bros. is aware that in the state of California (as well as in other states, including North Carolina, Illinois, Washington, Kansas, Texas, and most other states nationwide) the law allows minors to disaffirm contracts without restrictions.

72.   Despite this, Warner Bros. operates a no-refund policy that misleads, misrepresents, and fails to acknowledge a minor's right to get a refund.

73.   Upon information and belief, the Warner Bros. customer support team routinely sends emails to minor players and/or their parents, stating that in-app purchases are non-refundable, in violation of applicable law.

74.   Prior to making his purchases, Minor Plaintiff and the Class Members were unaware that Warner Bros. had a no refund policy for in-game purchases.

75.   Minor Plaintiff made purchases after viewing the purported discounted offerings in the False Sale Packs and False Gold Strikethrough Packs.

76.   He made these purchases without understanding the amounts of actual money involved in purchases to date. These purchases were made without parental knowledge or consent.

77.   Subsequent to making these purchases, Minor Plaintiff and his parents sought refunds, but were unable to obtain them.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ALLEGATIONS

78.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed "Global Class":

> All persons, within the applicable statute of limitations, who purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

79.    Within the Global Class, Minor Plaintiff P.W. brings also brings this action on behalf of himself and on behalf of the following subclass (the "Minor Subclass"):

> All persons, within the applicable statute of limitations, who, while under the age of 18, purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

80.    Plaintiff Charissa Keebaugh also brings this action on behalf of herself and on behalf of the following subclass (the "Washington Class"):

> All persons in Washington, within the applicable statute of limitations, who purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

81.    Plaintiff Stephanie Neveu also brings this action on behalf of herself and on behalf of the following subclass (the "Arizona Class"):

> All persons in Arizona, within the applicable statute of limitations, who purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

82.    Plaintiff Heather Mercieri also brings this action on behalf of herself and on behalf of the following subclass (the "New Hampshire Class"):

> All persons in New Hampshire, within the applicable statute of limitations, who purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

83.     Plaintiff Sophia Nicholson also brings this action on behalf of herself and the following subclass (the "New York Class"):

> All persons in New York, within the applicable statute of limitations, who purchased False Gold Strikethrough Packs or False Sale Packs, and/or such subclasses as the Court may deem appropriate.

84.     Excluded from the proposed Classes are Defendant and its employees, officers, directors, legal representatives, heirs, successors, subsidiaries, and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class.

85.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

86.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

87.     <u>Numerosity</u>. The members of the proposed Classes are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiffs believe that there are hundreds of thousands of members of the proposed Classes, the precise number of class members is unknown, but may be ascertained from Warner Bros.'s books and records. On information and belief, Warner Bros. maintains a list of users that includes personal

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1 information for the user including their email addresses, whether they have
2 made in-app purchases, and which in-app purchases they have made.

3    88.    Applying a reasonable and prudent person standard to the users
4 of Game of Thrones Conquest under the same or similar circumstances, each
5 user would qualify to be a class member requesting the right to cancel and
6 get refunds on their in-app purchases. Any reasonable and prudent person
7 under the same or similar circumstances wants to have the flexibility to
8 disaffirm an in-app purchase that was made while believing that the packs
9 they purchased were part of a sale or promotion but, in reality, were not.

10    89.    Ascertainability. The Classes are ascertainable because their
11 members can be readily identified using business records, and other
12 information kept by Defendant in the usual course of business and within its
13 control or Plaintiffs and the class members themselves. Plaintiffs anticipate
14 providing appropriate notice to the Classes to be approved by the Court after
15 class certification, or pursuant to court order.

16    90.    Commonality and Predominance. This action involves common
17 questions of law and fact, which predominate over any questions affecting
18 individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These
19 include, without limitation:

20        a.    Whether Warner Bros. engaged in the conduct alleged in
21              this Complaint;
22        b.    Whether Warner Bros. violated the applicable statutes
23              alleged herein;
24        c.    Whether Warner Bros. designed, advertised, marketed,
25              distributed, sold, or otherwise placed Game of Thrones
26              Conquest into the stream of commerce in the United States;
27        d.    Whether Warner Bros.'s conduct emanated from the State
28              of California;

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

e.   Whether Plaintiffs and the class members are injured and harmed directly by Warner Bros.'s false advertising designed to entice users into making in-app purchases they otherwise would not have made;

f.   Whether Plaintiffs and the class members are entitled to damages due to Warner Bros.'s conduct as alleged in this Complaint, and if so, in what amounts; and

g.   Whether Plaintiffs and members of the Classes are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

91.   Typicality. Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such class members were comparably injured through Warner Bros.'s wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3). Warner Bros.'s creation and display of its misleading advertisements is uniform for all Plaintiffs and class members.

92.   Adequacy. Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Classes they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed Classes will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

93.   Declaratory and Injunctive Relief. Warner Bros. has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2). Warner Bros.'s wrongful conduct alleged herein is grounded in the creation and dissemination

of Warner Bros.'s pack offerings in-game, which are displayed uniformly. Plaintiffs' and the class members' injuries are real, immediate, and ongoing. Plaintiffs and class members seek injunctive and declaratory relief from Warner Bros.

94.   Superiority. A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Warner Bros., so it would be impracticable for members of the proposed Classes to individually seek redress for Defendant's wrongful conduct.

95.   Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Warner Bros., a multibillion-dollar corporation that has immense resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by powerful private corporations, including Warner Bros.

96.   There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE GLOBAL CLASS**

97.   California's substantive laws apply to every class member, regardless of where the class member resides.

98.   Warner Bros. purports to bind GOTC's players to its Terms. While Plaintiffs contend these Terms fail to create a binding agreement with the players, the Terms require that any dispute be interpreted under California law. Thus, regardless of whether the Terms are binding, Warner Bros. has evidenced a clear intent to subject itself to California law.

99.   California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

100.   Warner Bros.'s United States headquarters and principal place of business is located in California. Warner Bros. also owns property and conducts substantial business in California. Therefore, California has an interest in regulating Warner Bros.'s conduct under its laws. Warner Bros.'s decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

101.   California is also the state from which Warner Bros.'s alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiffs and all other class members.

102.   The application of California laws to the Classes is also appropriate under California's choice of law rules because California has

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

significant contacts to the claims of Plaintiffs and the proposed Classes, and California has a greater interest in applying its laws here than any other interested state.

## FIRST CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Business & Professional Code §17200 *et seq.*

### (By Plaintiffs, individually and on behalf of the Global Class)

103.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

104.  The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

105.  A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

106.  A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

107.  A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

108.  Warner Bros. has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

109.  The Federal Trade Commission Act prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements. 15 U.S.C. §52(a). FTC Regulations describe false former pricing schemes—similar to Warner Bros.'s False Sale Packs and False Gold Strikethrough Packs in all material respects—as deceptive practices that would violate the FTC Act.

110.  16 C.F.R.§233.1 states:

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction— the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

111.   California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code §17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

112. As further detailed in the Second Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code §1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* §(a)(13)

113. The False Gold Strikethrough Packs violate the unlawful prongs of the UCL since they violate 16 C.F.R. §233.1, Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §§1770(a)(9) and (a)(13).

114. The False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price.

115. Warner Bros.'s use of the False Sale Packs violates 15 U.S.C. §45(a)(1), 15 U.S.C. §52(a), and the FTC Guidelines published in Title 16, Code of Federal Regulations, Section 233.

116. It also violated and continues to violate Cal. Bus. & Prof. Code §17501, and Cal. Civ. Code §1770, sections (a)(9) and (a)(13), by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months preceding the publication and dissemination of advertisements containing the false former prices.

117. Warner Bros. has also violated the "unlawful" prong of the UCL by

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  prohibiting minors, such as Minor Plaintiff and individuals in the Minor
2  Subclass, from disaffirming their contracts and obtaining refunds, in violation
3  of California law permitting minors to disaffirm contracts.

4     118.  Warner Bros. has also violated the "unfair" prong of the UCL by
5  falsely representing that its consumers received a discount from a referenced
6  "original" former price of its False Gold Strikethrough Packs where, in fact,
7  Warner Bros. set an arbitrary price for the goods contained in these packs
8  and then falsely pretended the packs had ever been offered for sale without
9  their "limited time bonus" contents.

10    119.  Additionally, Warner Bros. has violated the "unfair" prong of the
11 UCL by falsely representing that its False Sale Packs contained unique, time-
12 sensitive discounts when, in fact, they contained the same resources and in-
13 game items as other packs not connected with specific sales events (*e.g.*,
14 Black Friday).

15    120.  These acts and practices are unfair because they were likely to
16 cause consumers to falsely believe that Warner Bros. was offering value,
17 discounts, or bargains from the prevailing market value or worth of the
18 products sold that do not, in fact, exist. As a result, purchasers (including
19 Plaintiffs) reasonably understood that they were receiving valuable price
20 reductions on purchases of in-game items. This, in turn, has induced
21 reasonable purchasers to buy such products from Warner Bros. that they
22 would not have otherwise purchased.

23    121.  Warner Bros. has also violated the "unfair" prong of the UCL by
24 inducing minors, such as Minor Plaintiff and individuals in the Minor Subclass,
25 into purchases by concealing key information, such as the lifetime spend of a
26 player on the game and the non-refundability of purchases.

27    122.  Warner Bros. has also violated the "unfair" prong of the UCL by
28 targeting minor players, advertising the game to users ages 12 and older, and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  then failing to implement parental controls or age verifications (including when

2  making purchases in its game).

3     123.  Warner Bros. has also violated the "unfair" prong of the UCL by

4  concealing from minors and their parents their right, under California law, to

5  disaffirm purchases made.

6     124.  The gravity of the harm to Plaintiffs and members of the Classes

7  resulting from these unfair acts and practices outweighs any conceivable

8  reasons, justifications, or motives that Warner Bros. may have had for

9  engaging in such deceptive acts and practices.

10    125.  Additionally, Warner Bros. has violated the "fraudulent" prong of

11  the UCL because its marketing and advertising materials included false

12  "original" prices for its False Gold Strikethrough Packs, and because these

13  same materials also suggested that the offers in the False Sale Packs were

14  unique, limited, and would no longer be available at those price points

15  following the conclusion of its sale events. In actuality, the packs never

16  contained the "limited time" deals they purported to offer.

17    126.  Warner Bros.'s acts and practices deceived Plaintiffs and the

18  Classes at large. Specifically, Plaintiffs and the Classes relied on these

19  misleading and deceptive representations regarding the limited-time bonuses

20  they could expect to receive in the packs. Each of these representations and

21  deceptions played a substantial role in Plaintiffs' decisions to purchase the

22  packs, and Plaintiffs would not have done so in the absence of such

23  representations.

24    127.  Plaintiffs and the Classes never received the benefit of their

25  bargains with Warner Bros., in that the "discounted" resources offered for sale

26  in the packs did not give them the anticipated competitive edge against their

27  opponents. Competitors could simply purchase packs at the same false sale

28  pricing after the alleged sales expired, notwithstanding the representation that

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  these were limited-time offers.

2  128.  Similarly, players who purchased the False Sale Packs and the

3  False Gold Strikethrough Packs defensively (to protect against becoming

4  overpowered by opponents who they believed had been able to take

5  advantage of the purportedly limited-time bonuses) were deprived of the

6  benefit of their bargains, because the threat itself was a fabrication. There

7  was never a risk of falling behind due to a player's failure to purchase items

8  at their discounted price, because the price was always discounted.

9  129.  As a result of these violations under each of the fraudulent, unfair,

10  and unlawful prongs of the UCL, Defendant has been unjustly enriched at the

11  expense of Plaintiffs and members of the proposed Classes. Specifically,

12  Warner Bros. has been unjustly enriched by obtaining revenues and profits

13  that it would not otherwise have obtained absent its false, misleading, and

14  deceptive conduct

15  130.  Through its unfair acts and practices, Warner Bros. has

16  improperly obtained money from Plaintiffs and the class members. As such,

17  Plaintiffs request that this Court cause Warner Bros. to restore this money to

18  Plaintiffs and all class members, and to enjoin Warner Bros. from continuing

19  to violate the UCL, and/or from violating the UCL in the future. Otherwise,

20  Plaintiffs, the class members, and members of the general public may be

21  irreparably harmed and/or denied an effective and complete remedy if such

22  an order is not granted.

**SECOND CLAIM FOR RELIEF**

23  

**Violation of California's False Advertising Law ("FAL")**

24  

**Cal. Business & Professional Code §17500 *et seq.***

25  

**(By Plaintiffs, individually and on behalf of the Global Class)**

26  

27  131.  Plaintiffs incorporate by reference all allegations in this Complaint

28  and restate them as if fully set forth herein.

132. The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value, and former price.

133. Furthermore, the FAL provides that: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §17501.

134. The False Gold Strikethrough Packs and the False Sale Packs misrepresent the existence of a sale whereby players can allegedly purchase more items and gold from a pack than they normally could for the same price.

135. Through its unfair acts and practices, Warner Bros. has improperly obtained money from Plaintiffs and the class members. As such, Plaintiffs request that this Court cause Warner Bros. to restore this money to Plaintiffs and all class members, and to enjoin Warner Bros. from continuing to violate the FAL, and/or from violating the FAL in the future. Otherwise, Plaintiffs, the class members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF

**Violation of the California Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code. §1750 *et seq.***

**(By Plaintiffs, individually and on behalf of All Classes)**

136. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

137. Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code §1761(d) and have engaged in a transaction within

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   the meaning of Cal. Civ. Code §§1761(e) and 1770.

2   138. Defendant is a "person" within the meaning of Cal. Civ. Code
3   §§1761(c) and 1770 and sells "goods or services" within the meaning of Cal.
4   Civ. Code §§1761(b) and 1770.

5   139. GOTC and the in-app purchases are a "good" or "service" within
6   the meaning of Cal. Civ. Code. §§1761(a) and (b).

7   140. Warner Bros. has violated §1770(a)(13)'s proscription against
8   making false or misleading statements of fact concerning reasons for,
9   existence of, or amounts of, price reductions by misrepresenting the existence
10  of gold discounts via False Gold Strikethrough Packs and misrepresenting the
11  existence of holiday sales through its False Sale Packs.

12  141. On April 19, 2022, Plaintiffs, through counsel, sent a CLRA
13  demand to Warner Bros. that provided notice of Warner Bros.'s violation of
14  the CLRA and demanded that it correct, repair, replace, or otherwise rectify
15  the unlawful, unfair, false, and deceptive practices complained of herein. The
16  letter also stated that if Defendant refused to do so, Plaintiffs would seek
17  damages in this action pursuant to the CLRA.

18  142. Warner Bros. failed to rectify the problems associated with the
19  actions detailed above. Thus, pursuant to § 1782, Plaintiffs now seek actual,
20  punitive, and statutory damages, as appropriate, against Warner Bros.
21  pursuant to the CLRA.

22  143. Plaintiffs and the other class members suffered actual damages
23  as a direct and proximate result of Warner Bros.'s actions, concealment,
24  and/or omissions in the advertising, marketing, and promotion of its bait apps,
25  in violation of the CLRA, as evidenced by the substantial sums Warner Bros.
26  pocketed.

27  144. Plaintiffs, on behalf of themselves and the class members,
28  demand judgment against Warner Bros. for injunctive relief and attorney's

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   fees.

2        145.  Additionally, Plaintiffs, on behalf of themselves and the class

3   members, seek compensatory damages for losses sustained as a result of

4   Warner Bros.'s actions.

5        146.  Additionally, Plaintiffs, on behalf of themselves and the class

6   members, seek enhanced and punitive damages as authorized under the

7   CLRA.

8                          **FOURTH CLAIM FOR RELIEF**

9                                    **Fraud**

10      **(By Plaintiffs, individually and on behalf of All Classes)**

11       147.  Plaintiffs incorporate by reference all allegations in this Complaint

12   and restate them as if fully set forth herein.

13       148.  Defendant represented to all Plaintiffs that various purchased

14   packs were on sale in that they gave a higher amount of gold than normal,

15   that holiday or "sale" versions of the packs were not identical in item quantities

16   to their normal counterparts, and that pack purchases bestowed a certain

17   outcome upon purchase.

18       149.  These representations were false because the packs were never

19   offered with smaller amounts of gold; the "sale" versions of the packs were

20   identical to their normal counterparts.

21       150.  Defendant designed the graphical images on the advertisements

22   in a way that intentionally attracted Plaintiffs to the enticing but false claims

23   regarding gold amounts and the existence of sales

24       151.  Plaintiffs reasonably relied upon the claims made in the

25   advertisements in deciding to purchase the aforementioned packs.

26       152.  Upon purchasing the packs, Plaintiffs were harmed because, had

27   Plaintiffs known the claims were false, they would not have made those

28   purchases.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

153.  Plaintiffs' reliance on Defendant's misrepresentations in its pack advertisements was a substantial factor in causing harm to Plaintiffs.

154.  Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

### FIFTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (By Plaintiffs, individually and on behalf of All Classes)

155.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

156.  Defendant represented to all Plaintiffs that various purchased packs were on sale in that they gave a higher amount of gold than normal and that holiday or "sale" versions of the packs were not identical in item quantities to their normal counterparts.

157.  These representations were false because the packs were never offered with smaller amounts of gold and the "sale" versions of the packs were identical to their normal counterparts.

158.  Defendant designed the graphical images on the advertisements in a way that intentionally attracted Plaintiffs to the enticing but false claims regarding gold amounts and the existence of sales.

159.  Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

### SIXTH CLAIM FOR RELIEF

### Declaratory Judgment on Minors' Rights to Disaffirm

### (By Minor Plaintiff, individually and on behalf of the Minor Subclass)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

160.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

161.  On information and belief, GOTC is marketed to players 12 years and older. Warner Bros. enters into a contract with a minor when an in-game purchase by the minor is confirmed, and then accepted. Warner Bros. gives the consideration of digital content and entertainment service of in-game purchases, exchanged for the consideration of their purchase value in the form of actual money obtained from the minor.

162.  Under Cal. Fam. Code §6710, a minor or their guardian may disaffirm a contract before that minor reaches majority or within a reasonable period thereafter.

163.  Minor Plaintiff and his guardians have, by no later than the date of this First Amended Complaint, disaffirmed all in-game purchases made through GOTC to date and requested a refund.

164.  Minor Plaintiff seeks injunctive relief on behalf of himself and the Minor Subclass for future and prospective transactions in GOTC, and to require Warner Bros. to allow for refunds on all in-game purchases made by minors, without restriction.

165.  The contracts between Warner Bros. and the Minor Subclass are voidable, a fact which Warner Bros. denies.

166.  Thus, there is an actual controversy between the parties, requiring resolution by a declaratory judgment.

167.  Accordingly, Minor Plaintiff seeks a determination by the Court that: (a) this action may proceed and be maintained by a class action; (b) the sales contracts between Warner Bros. and members of the Minor Subclass are voidable at the option of those minors and/or their guardians; (c) if the members of the Minor Subclass elect to void these contracts, they will be entitled to restitution and interest thereon; and (d) an award of attorney's fees

1   and costs of suit to Minor Plaintiff and the Minor Subclass is appropriate; and

2   (e) such other and further relief as is necessary and just may be appropriate

3   as well.

**SEVENTH CLAIM FOR RELIEF**

**Violation of New Hampshire's Regulation of Business Practices for**

**Consumer Protection Act**

**(By Plaintiff Heather Mercieri, individually, and on behalf of the New**

**Hampshire Class)**

9   168.  Plaintiffs incorporate by reference all allegations in this Complaint

10  and restate them as if fully set forth herein.

11  169.  In the alternative, or to the extent California law does not apply,

12  Plaintiff Heather Mercieri brings this Count on behalf of herself and the New

13  Hampshire Class.

14  170.  New Hampshire's Regulation of Business Practices for Consumer

15  Protection, §358-A:1, is also known as the state's Consumer Protection Act.

16  171.  Warner Bros. qualifies as a "Person" under §358-A:1 of the Act.

17  172.  §358-A:2(VII) prohibits "[r]epresenting that goods or services are

18  of a particular standard, quality, or grade, or that goods are of a particular

19  style or model, if they are of another."

20  173.  §358-A:2(IX) prohibits "[a]dvertising goods or services with intent

21  not to sell them as advertised."

22  174.  §358-A:2(XI) prohibits "[m]aking false or misleading statements of

23  fact concerning the reasons for, existence of, or amounts of price reductions."

24  175.  Warner Bros. violated (VII), (IX), and (XI) of §358-A:2 by

25  advertising False Gold Strikethrough Packs and False Sale Packs, which

26  Plaintiffs purchased.

27  176.  Plaintiff Heather Mercieri and the New Hampshire Class were

28  injured by Warner Bros.'s violations because, if not for Warner Bros.'s

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1  deceptive representations that the packs contained increased amounts of
2  gold than normally offered, and that the packs contained more items than
3  usual because of holiday sales, Plaintiffs would not have made the purchases.

4     177.  Defendant's conduct has therefore caused and is causing
5  immediate and irreparable injury to Plaintiffs and the class members, and will
6  continue to both damage Plaintiffs and the class members and deceive the
7  public unless enjoined by this Court.

8                    **EIGHTH CLAIM FOR RELIEF**

9  **Violation of Washington's Consumer Protection Act (RCW 19.86.020)**
10  **(By Plaintiff Charissa Keebaugh, individually, and on behalf of the**
11                       **Washington Class)**

12     178.  Plaintiffs incorporate by reference all allegations in this Complaint
13  and restate them as if fully set forth herein.

14     179.  Plaintiff Charissa Keebaugh hereby brings this Claim, under
15  Washington's Consumer Protection Act, Revised Code of Washington
16  ("RCW") 19.86.020, against Warner Bros. on behalf of herself and the
17  Washington Class.

18     180.  Defendant Warner Bros. engages in acts and practices that had
19  or have the capacity to deceive substantial portions of the public, during trade
20  or commerce.

21     181.  Warner Bros.'s marketing of its False Gold Strikethrough Packs
22  and False Sale Packs had the capacity to deceive substantial portions of the
23  public because Warner Bros.'s advertisements create the illusion of sales
24  and/or discounts with respect to their False Gold Strikethrough Packs and
25  False Sale Packs.

26     182.  Defendant's deceptive advertising acts and practices significantly
27  affected the public interest as thousands of consumers made purchases
28  based on the representations in the advertisements.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

183.  Defendant's practices brought injury to Plaintiffs in that they made purchases they otherwise would not have made.

184.  There is causation between the deceptive advertising and the injury suffered by Plaintiffs because, if not for Defendant's deceptive claims made in the advertisements of False Gold Strikethrough Packs and False Sale Packs, Plaintiffs would not have purchased those packs.

185.  Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members, and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## NINTH CLAIM FOR RELIEF

### Violation of N.Y. Gen. Bus. Law §§ 349 & 350
### (By Sophia Nicholson, individually, and on behalf of the New York Class)

186.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

187.  Plaintiff Sophia Nicholson hereby brings this Claim, under New York General Business Law §§ 349 & 350, against Warner Bros. on behalf of herself and the New York Class

188.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair by virtue of offering False Gold Strikethrough Packs and False Sale Packs as in-app purchases for sale through the GOTC app.

189.  Defendant caused to be disseminated through New York state and elsewhere, through advertising, marketing, and other publications, statements that were untrue and misleading, and which it knew were untrue and misleading.

190.  Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    large. Consumers were and continue to be exposed to Defendant's material
2    misrepresentations.

3        191.   Plaintiffs and the class members have been injured by
4    Defendant's deceptive acts or practices.

5        192.   Plaintiffs and the class members have no adequate remedy
6    at law.

7        193.   Defendant's conduct has caused and is causing immediate
8    and irreparable injury to Plaintiffs and the Classes and will continue to both
9    damage Plaintiffs and the Classes and deceive the public unless enjoined by
10   this Court.

11       194.   Any person who has been injured by reason of any violation
12   of NY GBL §349 may bring an action in his or her own name to enjoin such
13   unlawful acts or practices, an action to recover their actual damages or $50,
14   whichever is greater, or both such actions. The court may, in its discretion,
15   increase the award of damages to an amount not exceeding three times the
16   actual damages, in addition to $1,000 per violation, if the court finds that a
17   defendant willfully or knowingly violated this section. The court may award
18   reasonable attorney's fees to a prevailing plaintiff.

19       195.   Pursuant to NY GBL §350(e) Plaintiff and the New York
20   Class seek monetary damages (including actual damages, or $500,
21   whichever is greater, and minimum, punitive, or treble and/or statutory
22   damages pursuant to NY GBL §350(a1)), injunctive relief, restitution, and
23   disgorgement of all monies obtained by means of Defendant's unlawful
24   conduct, interest, and attorney's fees and costs.

### III.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed
Classes, pray for relief and judgment against Defendant as follows:

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

A.  Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as class counsel;

B.  Awarding Plaintiffs and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C.  Awarding Plaintiffs and the class members appropriate relief, including actual and statutory damages;

D.  For punitive damages;

E.  For civil penalties;

F.  For declaratory and equitable relief, including a declaration that Defendant violated and continues to violate California's UCL, the FAL, and the CLRA and an injunction requiring Defendant to comport with California Business & Professions Code §§ 17200, *et seq*., and restitution and disgorgement;

G.  For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.  Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

I.  Awarding Plaintiffs and the class members reasonable attorney's fees and costs as allowable by law;

J.  Awarding Plaintiffs and the class members reasonable attorney's fees pursuant to Cal. Civ. Proc. Code 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorney's fees;

K.  Awarding Plaintiffs and the class members reasonable attorney's fees and costs, as well as injunctive relief, pursuant to the CLRA;

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

L.  Awarding Plaintiffs and the class members punitive and enhanced damages, pursuant to the CLRA;

M.  Awarding pre-judgment and post-judgment interest; and

N.  Granting any other relief as this Court may deem just and proper.

## IV.  JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

DATED: May 23, 2022  **KRONENBERGER ROSENFELD, LLP**

By: _____

Karl S. Kronenberger
karl@KRInternetLaw.com
Katherine E. Hollist *(Pro hac vice forthcoming)*
kate@KRInternetLaw.com
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155

**POLLOCK COHEN LLP**
Raphael Janove
rafi@pollockcohen.com
Adam Pollock
adam@pollockcohen.com
60 Broad St., 24th Fl.
New York, NY 10004
Telephone: (212) 337-5361

Admitted *pro hac vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JAY KUMAR LAW**
Jay Kumar
jay@jaykumarlaw.com
73 W. Monroe Street, Suite 100
Chicago, IL 60603
Telephone: (312) 767-7903
Admitted *pro hac vice*
*Attorneys for Plaintiffs and the*
*Proposed Classes*