1  CHRISTOPHER CHORBA, SBN 216692
       cchorba@gibsondunn.com
2  JEREMY S. SMITH, SBN 283812
       jssmith@gibsondunn.com
3  PATRICK J. FUSTER, SBN 326789
       pfuster@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
6  Facsimile:   213.229.7520

7  *Attorneys for Defendant*
   *Warner Bros. Entertainment Inc.*

8

                UNITED STATES DISTRICT COURT

9

               CENTRAL DISTRICT OF CALIFORNIA

10

                    WESTERN DIVISION

11

12  CHARISSA KEEBAUGH,                 CASE NO. 2:22-CV-01272-MEMF
    STEPHANIE NEVEU, HEATHER           (AGRx)
13  MERCIERI, SOPHIA NICHOLSON,
    and P.W., by and through JOIE      **DEFENDANT WARNER BROS.**
14  WEIHER,                            **ENTERTAINMENT INC.'S MOTION**
                                       **TO COMPEL ARBITRATION AND**
15               Plaintiffs,           **STAY PROCEEDINGS**

16        v.                           **Hearing:**
                                       Date:      August 25, 2022
17  WARNER BROS. ENTERTAINMENT         Time:      10:00 a.m.
    INC., a Delaware corporation,      Place:     Courtroom 8B
18                                     Judge:     Hon. Maame Ewusi-Mensah
                 Defendant.                       Frimpong

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2       **PLEASE TAKE NOTICE THAT** on August 25, 2022, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard before the Honorable Maame Ewusi-Mensah

4   Frimpong of the United States District Court for the Central District of California in the

5   First Street Courthouse, Courtroom 8B, 350 West First Street, Los Angeles, California

6   90012, Defendant Warner Bros. Entertainment Inc. ("Warner Bros.") will and does

7   move this Court for an order: (1) compelling Plaintiffs' claims to arbitration on an

8   individual basis; and (2) staying Plaintiffs' claims pending the completion of arbitration.

9       Warner Bros. brings this Motion because Plaintiffs' claims are subject to a valid

10  and enforceable arbitration agreement that requires Plaintiffs to arbitrate those claims on

11  an individual basis. *See* 9 U.S.C. §§ 3–4.

12      This Motion is made following the conference of counsel pursuant to Local

13  Rule 7-3, which took place on June 3, 2022.

14      Warner Bros.' Motion is based on this Notice of Motion and Motion, the

15  accompanying Memorandum of Points and Authorities, the concurrently filed

16  Declaration of David Woldman, the Proposed Order, any other matters of which the

17  Court may take judicial notice, other documents on file in this action, and any oral

18  argument of counsel.

19

20  Dated:  June 13, 2022            GIBSON, DUNN & CRUTCHER LLP

21

22                          By:    */s/ Christopher Chorba*
                                   Christopher Chorba

23
                            *Attorneys for Defendant Warner Bros.*
24                          *Entertainment Inc.*

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................... 2

      A.    The Relevant Terms of Use.......................................................... 2

      B.    Plaintiffs File Individual and Class Claims Against Warner Bros. ........... 5

III.  LEGAL STANDARD ........................................................................... 6

IV.   ARGUMENT...................................................................................... 7

      A.    The Federal Arbitration Act Governs the Arbitration Agreement............. 7

      B.    Plaintiffs and Warner Bros. Agreed to Binding Individual
            Arbitration ............................................................................. 8

            1.    Plaintiffs and Warner Bros. Formed a Valid Arbitration
                  Agreement................................................................... 8

            2.    The Arbitration Agreement Encompasses Plaintiffs' Claims. ...... 14

            3.    The Claims Must Be Arbitrated on an Individual Basis................ 16

      C.    The Court Should Stay the Case Pending Completion of Arbitration ..... 17

V.    CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.V. v. iParadigms, Ltd. Liability Co.*,
544 F. Supp. 2d 473 (E.D. Va. 2008) ................................................................ 14

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .............................................................................................. 7

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ...................................................................................... 7, 17

*Armendariz v. Foundation Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ......................................................................................... 12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................... 1, 4, 7, 9, 12, 16, 17

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal. App. 5th 931 (2022) ...................................................................... 9, 10, 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ...................................................................... 10, 11

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........................................................................... 15

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .............................................................................................. 7

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) ............................................................................. 14

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ........................................................................... 11

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ................................................................................................ 8

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) .............................................................................................. 14

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ...................................................................... 11

*Doyle v. Giuliucci*,
62 Cal. 2d 606 (1965) ......................................................................................... 13

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ...................................................................................... 9, 15

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .................................................................................. 6, 17

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Esquivel v. Charter Comm'cns, Inc.*,
  No. 18-cv-7304-GW-MRWx, 2018 WL 10806904 (C.D. Cal. Dec. 6,
  2018) ............................................................................................................... 11

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................... 8, 15

*Fish v. Tesla, Inc.*,
  No. 21-cv-060-PSG-JDEx, 2022 WL 1552137 (C.D. Cal. May 12,
  2022) ......................................................................................................... 10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ..................................................................................... 15

*Hohe v. San Diego Unified Sch. Dist.*,
  224 Cal. App. 3d 1559 (1990) ....................................................................... 13

*Homedics, Inc. v. Valley Forge Ins. Co.*,
  315 F.3d 1135 (9th Cir. 2003) ......................................................................... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ........................................................................................... 7

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ....................................................................... 17

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ....................................................................................... 8

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  137 S. Ct. 1421 (2017) ................................................................................... 14

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ................................................................................... 17

*Laver v. Credit Suisse Securities (USA), LLC*,
  976 F.3d 841 (9th Cir. 2020) ......................................................................... 17

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ......................................................................... 8

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855 (2016) ........................................................................... 9

*Magana v. DoorDash, Inc.*,
  343 F. Supp. 3d 891 (N.D. Cal. 2018) ........................................................... 17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) ........................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Martinez v. Anthem Cos., Inc.*,
No. 19-cv-3692-RGK-JPRx, 2019 WL 6825739 (C.D. Cal. July 23, 2019) .................................................................................................... 18

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ............................................................... 10, 11

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ................................................................ 12

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
186 Cal. App. 4th 696 (2010) .................................................................. 14

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................................................................................... 15

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .................................................................. 8

*Norcia v. Samsung Telecomm. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) .................................................................. 9

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .................................................... 11

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*,
55 Cal. 4th 223 (2012) ....................................................................... 12, 13

*R.A. v. Epic Games, Inc.*,
No. 19-cv-1488-GW-Ex, 2019 WL 6792801 (C.D. Cal. July 30, 2019) ............ 8, 14

*Regan v. Pinger, Inc.*,
2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ............................................ 11

*In re Ring LLC Privacy Litig.*,
No. 19-cv-10899-MWF-RAOx, 2021 WL 2621197 (C.D. Cal. June 24, 2021) .................................................................................................... 11

*Scherck v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ................................................................................ 17

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) .................................................................................... 12

*Stewart v. Preston Pipeline Inc.*,
134 Cal. App. 4th 1565 (2005) ................................................................. 9

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ................................................................................ 17

*Strotz v. Dean Witter Reynolds, Inc.*,
223 Cal. App. 3d 208 (1990) .................................................................. 11

v

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Ting v. AT&T,*
319 F.3d 1126 (9th Cir. 2003) ............................................................................ 12

*Tompkins v. 23andMe, Inc.,*
840 F.3d 1016 (9th Cir. 2016) ............................................................................ 12

*Wagner v. Stratton Oakmont, Inc.,*
83 F.3d 1046 (9th Cir. 1996) ................................................................................ 9

*Wayne v. Staples, Inc.,*
135 Cal. App. 4th 466 (2006) ............................................................................. 13

*Wilson v. Huuuge, Inc.,*
944 F.3d 1212 (9th Cir. 2019) ............................................................................ 10

*Zelnick v. Adams,*
263 Va. 601 (2002) ............................................................................................. 14

**STATUTES**

9 U.S.C. § 2 ......................................................................................... 7, 9, 12

9 U.S.C. § 3 ......................................................................................... 2, 7, 17

9 U.S.C. § 4 ......................................................................................... 7, 9, 16

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................ 6

Cal. Bus. & Prof. Code § 17501 ........................................................................... 6

Cal. Civ. Code § 1550 ......................................................................................... 9

Cal. Civ. Code § 1556 ......................................................................................... 9

Cal. Civ. Code § 1557 ......................................................................................... 9

Cal. Civ. Code § 1750 *et seq.* ............................................................................... 6

Cal. Fam. Code § 6700 ........................................................................................ 9

Cal. Fam. Code § 6701 ........................................................................................ 9

Cal. Fam. Code § 6712 ....................................................................................... 14

N.H. Rev. Stat. § 358-A:1 *et seq.* .......................................................................... 6

N.Y. Gen. Bus. Law § 349 .................................................................................... 6

N.Y. Gen. Bus. Law § 350 .................................................................................... 6

Wash. Rev. Code § 19.86.020 *et seq.* .................................................................... 6

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

**RULES**

4

AAA Rule R-14(a) .......................................................................................... 15

5

Fed. R. Civ. P. 17(c) ........................................................................................ 9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

This putative class action lawsuit challenges certain aspects of a mobile application video game called *Game of Thrones: Conquest*. Based on the popular television series, players assemble armies and play against one another to amass the strongest house and compete for the "Iron Throne." As with many mobile video games, players have the option to purchase bundles of virtual items to enhance their gameplay, such as virtual gold, weapons, food, and building material.

Plaintiffs Charissa Keebaugh, Stephanie Neveu, Heather Mercieri, Sophia Nicholson, and P.W. contend that that these virtual items were improperly represented as "discounted" from their original price. They do not contend that they were charged a different amount from what was displayed on the screen, but instead that the advertised "discount" was illusory.

But this Court need not wade into the merits of these claims, because they belong in arbitration. Warner Bros. invests significant time, money, and effort in developing exciting high-quality games that are free to play. Players can enjoy many hours of entertainment without having to spend anything at all, if they choose. The one thing Warner Bros. requires in return for playing the free game is that every player—including each of the named Plaintiffs here—agrees to Warner Bros.' Terms of Use, including an agreement "to arbitrate all disputes and claims between" the parties. One of Plaintiffs' counsel is well aware of this, having previously arbitrated and lost a similar case of his own about the game.

The sign-in page for *Game of Thrones: Conquest* presents a conspicuous notice of these Terms of Use, which in turn disclose prominently in the first paragraph that the parties' contract requires arbitration on an individual basis without class procedures. And the arbitration agreement includes a class action waiver that is identical to the provision that the Supreme Court upheld in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 352 (2011). As the Court has repeatedly confirmed since that decision, the Federal Arbitration Act simply does not allow Plaintiffs to disregard their contractual

Gibson, Dunn & Crutcher LLP

obligations.  There is no basis for refusing to enforce the binding arbitration agreement here, and the Court should compel Plaintiffs to arbitrate all their claims on an individual basis and stay this case pending the completion of arbitration under 9 U.S.C. § 3.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Relevant Terms of Use

This case centers on Warner Bros.' mobile application video game, *Game of Thrones: Conquest*.  This app, like many, requires users to complete a "sign-in flow"— *i.e.*, players may gain access only by accepting terms and conditions for using the game. At all times, the sign-in screen presented players with an affirmation, immediately below the "Play" button, that "By tapping 'Play' I agree to the Terms of Service" or "By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy."





Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 2:22-CV-01272-MEMF (AGRx)

(Decl. of David Woldman, Exs. 5, 7; *see also id.*, Ex. 6.)  As depicted above, the sign-in screens displayed hyperlink boxes immediately below the affirmation that directed players to the privacy policy and Terms of Use (TOU) for *Game of Thrones: Conquest*. (The screens did not display "Development Build" to users.)  Players could not gain initial access to the game without accepting the TOU, and they were periodically required to re-accept the TOU following updates.  (Woldman Decl. ¶¶ 6, 10.)

Ms. Mercieri and Ms. Neveu allege that they began playing *Game of Thrones: Conquest* in July 2018 and June 2019, respectively.  (Am. Compl. ¶¶ 20–21, Dkt. 39.) At those times, players could not access the game without first completing the sign-in process by clicking "Play" on the screen shown on the left above.  (Woldman Decl. ¶¶ 6, 8.)  Through this process, they necessarily agreed to the TOU that took effect on May 8, 2018.  The TOU began with a conspicuous disclosure that the agreement requires individualized arbitration:

> "PLEASE READ THESE TERMS OF USE ('Terms,' 'Terms of Use,' or 'Agreement') CAREFULLY—THEY AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS, AND INCLUDE WAIVERS OF RIGHTS, LIMITATIONS OF LIABILITY, AND YOUR INDEMNITY TO US. THESE TERMS ALSO REQUIRE THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, WAIVING YOUR RIGHT TO A JURY TRIAL AND CLASS ACTION RELIEF."

(Ex. 1 at 5 [2018 TOU].)

This 2018 arbitration agreement is broad in scope.  By accepting the TOU, Ms. Mercieri and Ms. Neveu agreed that, "[w]ith the exception of class actions, small claims court filings, or actions for preliminary injunctive relief (as further discussed below), any other dispute of any kind between you and Warner arising under this Agreement or in connection with your use of the Service . . . will be resolved by binding arbitration." (Ex. 1 [2018 TOU § 16(C)(1)].)  They also agreed "that disputes will be resolved on an individual basis and that any claims brought under these Terms of Use or in connection with the [game] must be brought in the parties' individual capacities, and not as a plaintiff or class member in any putative class, collective, or representative

proceeding." (*Id.* § 16(C)(2) [capitalization omitted].)  *See Concepcion*, 563 U.S. at 336 (upholding identical class action waiver).  The TOU also provides that "[t]he arbitrator will be empowered to grant whatever relief would be available in a court under law or in equity, other than class relief." (*Id.* § 16(C)(1).)

Ms. Keebaugh and Ms. Nicholson allege that they began playing *Game of Thrones: Conquest* in May 2020 and June 2020, respectively. (Am. Compl. ¶¶ 19, 22.) At that time, players could not access the game without first completing the sign-in process by clicking the "Play" button on the screen shown on the right above. (Woldman Decl. ¶¶ 6, 9.)  They thus necessarily agreed to the TOU that took effect on April 7, 2020.  That TOU also started with a clear and conspicuous disclosure of the agreement that the parties would submit their disputes to individualized arbitration:

> "FIRST, AN IMPORTANT MESSAGE: PLEASE READ THESE TERMS OF USE ('Terms', 'Terms of Use', or 'Agreement') CAREFULLY BEFORE USING THIS ONLINE ENTERTAINMENT SERVICE, AS THEY AFFECT YOUR LEGAL RIGHTS AND OBLIGATIONS, INCLUDING, BUT NOT LIMITED TO, WAIVERS OF RIGHTS, LIMITATION OF LIABILITY, AND YOUR INDEMNITY TO US.  **THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN COURTS, JURY TRIALS, OR CLASS ACTIONS, AND LIMITS THE REMEDIES AVAILABLE IN THE EVENT OF A DISPUTE.**"

(Ex. 3 at 32 [2020 TOU]; *see also* Ex. 2 at 18 [2019 TOU] [identical language].)

The arbitration agreement in the 2020 TOU is materially identical to the one in the 2018 TOU to which Ms. Mercieri and Ms. Neveu initially agreed.  Ms. Keebaugh and Ms. Nicholson "agree[d] to arbitrate all disputes and claims" with Warner Bros., including "claims arising out of or relating to any aspect of the relationship between [them]." (Ex. 3 [2020 TOU § 16(A)]; *see* Ex. 2 [2019 TOU § 16(A)] [identical].)  This bilateral agreement between Plaintiffs and Warner Bros. provided that "you and we agree that each may bring claims against the other only in your or our individual capacity, and not as a plaintiff or class member in any purported class, representative, or

private attorney general proceeding."  (Ex. 3 [2020 TOU § 16(F)] [bolding and capitalization omitted]; *see* Ex. 2 [2019 TOU § 16(F)] [identical].)  Finally, Ms. Keebaugh and Ms. Nicholson agreed that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."  (Ex. 3 [2020 TOU § 16(F)]; *see* Ex. 2 [2019 TOU § 16(F)] [identical].)[1]

P.W. does not allege when he began playing *Games of Thrones: Conquest* or whether a guardian completed the sign-in process for his account.  (*See generally* Am. Compl.)  But if he purchased packs of virtual items, he or his guardian necessarily completed the sign-in process under the 2018 TOU, 2019 TOU, 2020 TOU, and/or 2022 TOU.  (Woldman Decl. ¶¶ 6–9; *see id.*, Ex. 4 [2022 TOU] [materially identical to 2020 TOU].)  And P.W. could have gained access to *Game of Thrones: Conquest* only by agreeing to the condition that "you represent and warrant that you have sufficient legal capacity to enter into this Agreement or, if you lack such capacity (for instance, if you are a minor), that you have obtained parent or guardian consent to do so."  (Ex. 4 [2022 TOU § 2]; Ex. 3 [2020 TOU § 2]; Ex. 2 [2019 TOU § 2]; Ex. 1 [2018 TOU § 2].)

**B.    Plaintiffs File Individual and Class Claims Against Warner Bros.**

*Game of Thrones: Conquest* is free to download and play through the Apple App Store and Google Play Store.  (Am. Compl. ¶¶ 25, 27.)  Players have the option to spend money on in-app purchases of packs containing virtual items, such as "gold, building materials, crafting materials, research materials, dragon food," and a range of other items.  (*Id.* ¶ 29.)  Buying virtual items is not necessary to play the game, but players may elect to purchase packs of virtual items if they so choose.  (*Id.* ¶¶ 27–28.)

Plaintiffs allege that they made in-app purchases of virtual items through *Game*

---

[1]  The 2018 TOU differs from the other TOUs in two respects that have no impact on this Motion:  (1) the 2018 version delegates gateway issues of arbitrability to the arbitrator, including "any claim that all or any part of these [TOU] is void or voidable, or whether a claim is subject to arbitration" (Ex. 1 [2018 TOU § 16(C)(1)]); and (2) unlike the later iterations, the arbitration agreement contained a right to opt out within 30 days (*id.* § 16(C)(3)).  Warner Bros. has not received an opt-out form from any of Plaintiffs.  (Woldman Decl. ¶ 11.)

Gibson, Dunn & Crutcher LLP

*of Thrones: Conquest.*  (*Id.* ¶¶ 19–23.)  According to Plaintiffs, the game advertised some of these packs as being a time-limited "special" or "sale" pack even though similar packs were offered at other points in time.  (*Id.* ¶¶ 51–55.)  Plaintiffs also allege that the game advertised other packs with a strikethrough graphic that, according to Plaintiffs, represented that the pack contained more virtual "gold" than packs sold at that same price at other points in time.  (*Id.* ¶¶ 41–49.)  Plaintiffs assert that the "sale" and "strikethrough" graphics are deceptive and that they would not have purchased the packs without the advertising.  (*Id.* ¶¶ 50, 56.)

Instead of submitting these allegations to arbitration, as the TOU requires, Plaintiffs filed this action on behalf of a putative global class, a putative nationwide subclass of minors, a putative Washington class, a putative Arizona class, a putative New Hampshire class, and a putative New York class.  (*Id.* ¶¶ 78–83.)  They assert statutory claims under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*); the California False Advertising Law (*id.* § 17501); the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); the New Hampshire Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. § 358-A:1 *et seq.*); the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.020 *et seq.*); and N.Y. Gen. Bus. Law §§ 349 and 350.  (Am. Compl. ¶¶ 103–46, 168–95.)  They also assert common-law claims under theories of fraud and negligent misrepresentation (*id.* ¶¶ 147–59), and seek a declaratory judgment on the alleged rights of minors to disaffirm in-game purchases (*id.* ¶¶ 160–67).  The Amended Complaint requests classwide relief to remedy these alleged violations.  (*Id.* at 42.)

Warner Bros. brings this Motion to vindicate its contractual right to arbitration through the Federal Arbitration Act (FAA).  The parties also agreed to defer Warner Bros.' responsive pleading deadline until after this Court rules on this Motion.  (Dkt. 40.)

### III.   LEGAL STANDARD

Congress enacted the FAA "in response to a perception that courts were unduly hostile to arbitration." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  The

FAA reflects a "liberal federal policy favoring arbitration" that "makes arbitration agreements 'valid, irrevocable, and enforceable' as written." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011) (citations omitted).  Consistent with that policy, courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

The FAA requires the enforcement of a valid agreement to arbitrate when a particular dispute falls within the scope of agreement.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  If a court is satisfied that a plaintiff's claims are "referable to arbitration under an agreement in writing," it "shall on application of one of the parties stay" the action, 9 U.S.C. § 3, and order arbitration to "proceed in the manner provided for" in the agreement, *id.* § 4.  *See Concepcion*, 563 U.S. at 344.

## IV.   ARGUMENT

The FAA does not allow Plaintiffs to evade their contractual obligation to submit their disputes to individual arbitration, and Plaintiffs cannot identify any reason to avoid this result.   Plaintiffs' agreement with Warner Bros. subjects all their claims to arbitration, and this matter should be stayed pending the result of those proceedings.

### A.   The Federal Arbitration Act Governs the Arbitration Agreement

The FAA governs this agreement because each TOU is a "contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Here, the parties explicitly stated that their "agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision."  (Ex. 3 [2020 TOU § 16(A)]; Ex. 2 [2019 TOU § 16(A)]; Ex. 1 [2018 TOU § 16(A)(1)].)  *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442–44 (2006).

Moreover, the TOU falls comfortably within the broad meaning of "involving commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995).  The contract is an agreement between Warner Bros. (a citizen of California and Delaware) and Plaintiffs (citizens of different states) regarding the use of an online game that can involve (as here) purchases of virtual items.  (Am. Compl. ¶¶ 19–24.)  *See, e.g.*, *Allied-*

1   *Bruce*, 513 U.S. at 282 (holding that FAA governed contract with "multistate nature");

2   *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003) (per curiam) (effect on

3   interstate commerce measured "in the aggregate").

4   **B.   Plaintiffs and Warner Bros. Agreed to Binding Individual Arbitration**

5        Under the FAA, this Court need decide only two further issues: (1) whether there

6   exists a valid agreement to arbitrate; and (2) whether the agreement covers the dispute.

7   *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

8   Those two requirements are satisfied here.

9        **1.   *Plaintiffs and Warner Bros. Formed a Valid Arbitration Agreement.***

10        Federal courts determine the validity of an arbitration agreement by "apply[ing]

11   ordinary state-law principles that govern the formation of contracts." *First Options of*

12   *Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  This Court applies "the law of the

13   forum state—here, California—when making choice of law determinations." *Nguyen v.*

14   *Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  California's choice-of-law

15   analysis requires courts to "apply California law" unless the parties "identif[y] a

16   meaningful conflict between California law and the law of another state." *Homedics,*

17   *Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003).  If such a conflict

18   exists, the states where Plaintiffs reside—Washington, Arizona, New Hampshire, New

19   York, and Virginia (Am. Compl. ¶¶ 19–23)—have the greater "governmental interest"

20   in the application of their law to contracts formed within their borders by their residents.

21   *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–15 (2006); *see R.A. v. Epic*

22   *Games, Inc.*, No. 19-cv-1488-GW-Ex, 2019 WL 6792801, at \*5 (C.D. Cal. July 30,

23   2019) ("In California, federal courts apply the law of the state where the contract was

24   formed with respect to issues concerning contract formation.") (internal quotation marks

25   omitted).  But Warner Bros. at present is unaware of any meaningful conflict with

26   respect to contract formation and accordingly discusses California law of contract

27   formation.  *See Nguyen*, 763 F.3d at 1175 (finding that "California law and New York

28   law dictate the same outcome" for contract formation).

California law establishes four elements of a valid contract: (1) the parties are capable of contracting; (2) the contract has a lawful object; (3) the parties have given mutual consent; and (4) sufficient cause or consideration supports the contract. Cal. Civ. Code § 1550; *see Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017). Because the arbitration agreement in the TOU meets each of the four requirements and is not "revoca[ble]" under California law, this "making of the agreement for arbitration" requires "the parties to proceed to arbitration." 9 U.S.C. §§ 2, 4. The agreement here satisfies each of these elements:

<u>Capacity.</u> Plaintiffs are persons capable of contracting. Cal. Civ. Code §§ 1556–1557; *see also* Fed. R. Civ. P. 17(c). This goes for both adults and minors such as P.W.: "[A] minor may make a contract in the same manner as an adult," Cal. Fam. Code § 6700, subject only to exceptions not applicable here for (a) delegations of power, (b) contracts with respect to real property, and (c) contracts with respect to personal property "not in the immediate possession or control of the minor," *id.* § 6701.

<u>Lawful Object.</u> California law clearly establishes that arbitration is a lawful object. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005). And the FAA in any event would not allow state law to negate "the federal policy in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see Concepcion*, 563 U.S. at 346. State law must place arbitration agreements "on equal footing" with other contracts. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002).

<u>Mutual Consent.</u> Plaintiffs and Warner Bros. formed a sign-in wrap agreement, meaning an agreement that provides a sufficiently conspicuous "textual notice indicating the user will be bound by the terms" by clicking a sign-in button (or, as here, a play button). *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 946 (2022). Conspicuousness is a question of law determined by the features of the sign-in page. *See Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (2016). To determine whether the notice of the contractual terms was sufficiently conspicuous, California courts consider "the size, color, contrast, and location of any text notices; the

Gibson, Dunn & Crutcher LLP

obviousness of any hyperlinks; and overall screen 'clutter'" on the sign-in page.  *B.D.*, 76 Cal. App. 5th at 947; *see also Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019) (discussing rules for clickwrap agreements, which likewise "require users to affirmatively assent to the terms of use before they can access the website and its services").  Importantly, "[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).

Plaintiffs formed a valid contract with Warner Bros. because (1) the sign-in page "provide[d] reasonably conspicuous notice" of the TOU and (2) Plaintiffs took an "action, such as clicking a button or checking a box, that unambiguously manifest[ed] his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  Plaintiffs could not have accessed *Game of Thrones: Conquest* without completing this process on the sign-in page. (*See* Woldman Decl. ¶¶ 6–9.)  This evidence on the function of the mobile application game is "sufficient to establish their assent." *Fish v. Tesla, Inc.*, No. 21-cv-060-PSG-JDEx, 2022 WL 1552137, at *4 (C.D. Cal. May 12, 2022).

*First*, the sign-in screen provided sufficiently conspicuous notice that terms and conditions govern access to the game.  The screen listed a clear affirmation right below the play button that Plaintiffs accepted the TOU by clicking the play button.  (Ex. 5 ["By tapping 'Play' I agree to the Terms of Service"]; Exs. 6–7 ["By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy."].)  Before accepting the agreement, Plaintiffs also had the opportunity to click the obvious hyperlink titled "Terms of Service" that was immediately below the play button.  (Exs. 5–7.)  That link took (or would have taken) Plaintiffs to the TOU, which provided a conspicuous notice in its first paragraph that Plaintiffs were agreeing to arbitration on an individual basis. (Ex. 3 at 1 [2020 TOU]; Ex. 2 at 1 [2019 TOU]; Ex. 1 at 1 [2018 TOU].)  This layout satisfies the conspicuousness requirement because the notice of contractual terms was "spatially coupled" and "temporally coupled" with the play button.  *Meyer v. Uber*

Gibson, Dunn &
Crutcher LLP

*Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (applying California law); *see, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020); *Fish*, 2022 WL 1552137, at *4; *In re Ring LLC Privacy Litig.*, No. 19-cv-10899-MWF-RAOx, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021); *Regan v. Pinger, Inc.*, 2021 WL 706465, at *6–7 (N.D. Cal. Feb. 23, 2021); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585–87 (N.D. Cal. 2020).

*Second*, Plaintiffs unambiguously manifested their assent to the TOU.   Each Plaintiff clicked "Play" after being informed, again, that "[b]y tapping 'Play,'" they "agree[d]" or "accept[ed]" the TOU.   (Exs. 5–7.)   This notice ensured unambiguous assent because it "explicitly advised" users "that the act of clicking will constitute assent to the terms and conditions of an agreement."   *Berman*, 30 F.4th at 857; *see, e.g.*, *Meyer*, 868 F.3d at 78–80.   Nor could the existence of the TOU have come as a surprise to Plaintiffs.   Game developers invest considerable resources in designing entertaining games that players can enjoy on an ongoing basis.   As a result, California law on contract formation provides that players signing up for an online video game can reasonably expect "a continuing, forward-looking relationship governed by terms and conditions." *B.D.*, 76 Cal. App. 5th at 946 (internal quotation marks omitted) (applying this principle to a contract accepted by a minor).

Consideration.   Plaintiffs and Warner Bros. agreed to submit their disputes to arbitration.   (Ex. 3 [2020 TOU § 16(A)]; Ex. 2 [2019 TOU § 16(A)]; Ex. 1 [2018 TOU § 16(C)(1)].)   These mutual promises to arbitrate were valid consideration to form a contract.   *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 423 (1996).   Even when (unlike here) only one party must submit claims to arbitration, the "promise to be bound by the arbitration process itself serves as adequate consideration" under California law.   *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *see, e.g.*, *Esquivel v. Charter Comm'cns, Inc.*, No. 18-cv-7304-GW-MRWx, 2018 WL 10806904, at *4 n.7 (C.D. Cal. Dec. 6, 2018) (holding that

consideration exists because "the agreement [to arbitrate] is a mutual one, meaning that *both parties* gave up rights to litigate in court").

Enforceability.  Plaintiffs formed a valid arbitration agreement and cannot now "ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).  While a court may refuse to enforce an arbitration agreement under 9 U.S.C. § 2 by relying on "generally applicable contract defenses" that do not "stand as an obstacle to the accomplishment of the FAA's objectives," *Concepcion*, 563 U.S. at 343, no such defense applies here.  Plaintiffs will be unable to prove that the arbitration agreement is unconscionable because the TOU is neither substantively nor procedurally "unconscionable"—both of which must be present to decline to enforce the agreement. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (citing *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). As noted, the Supreme Court upheld this identical clause in *Concepcion*, ruling that the FAA preempted California state-law unconscionability challenges that target features of arbitration.  563 U.S. at 352.

As an initial matter, the TOU is not "substantively unconscionable" because the arbitration provision is bilateral, not "overly harsh or one-sided." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*, 55 Cal. 4th 223, 246 (2012).  It governs claims brought by Warner Bros., just like it governs these claims brought by Plaintiffs. (Ex. 3 [2020 TOU § 16(A)]; Ex. 2 [2019 TOU § 16(A)]; Ex. 1 [2018 TOU § 16(C)(1)].) And although the 2020 TOU and 2019 TOU exclude intellectual property claims from arbitration, that exclusion is not relevant to the present dispute and in any event is mutual, which prevents a finding of unconscionability. *See, e.g., Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016).  Finally, Warner Bros. agreed to pay the arbitral fees for non-frivolous claims seeking less than $75,000 (Ex. 3 [2020 TOU § 16(D)]; Ex. 2 [2019 TOU § 16(D)]), which ensures that no good-faith claimant could face "prohibitive arbitration costs" relative to the value of their claims (*Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003)).  (*See also* Ex. 1 [2018 TOU § 16(C)(1)] [requiring

users to pay only $250 filing fee and also allowing users to bring claims worth less than $10,000 in small claims court].)

Nor is the agreement "procedurally unconscionable." Plaintiffs cannot show "oppression or surprise" here. *Pinnacle*, 55 Cal. 4th at 247. "There can be no oppression establishing procedural unconscionability" because Plaintiffs "have a wide range of choices" for online video games—after all, nothing compelled them to play *Game of Thrones: Conquest* if they were not willing to abide by the arbitration agreement. *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006). And as to (lack of) surprise, the very first paragraph of the TOU conspicuously states: "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN COURTS, JURY TRIALS, OR CLASS ACTIONS, AND LIMITS THE REMEDIES AVAILABLE IN THE EVENT OF A DISPUTE.**" (Ex. 3 at 32 [2020 TOU]; Ex. 2 at 18 [2019 TOU] [identical]; Ex. 1 at 5 [2018 TOU] [similar capitalized statement without bolding].) The arbitration agreement was in no way "hidden within a prolix" document, so Plaintiffs cannot avoid their contractual obligations on the ground that they "never actually read the clause." *Pinnacle*, 55 Cal. 4th at 236, 247 (internal quotation marks omitted).

The arbitration provisions also govern Plaintiff P.W.'s claims. Plaintiffs admit that P.W.'s parents "allowed him access" to *Game of Thrones: Conquest*. (Am. Comp. ¶ 68.) And P.W. could not access the game without representing to Warner Bros. that he "obtained parent or guardian consent to do so." (Ex. 3 [2020 TOU § 2]; *see supra*, at p. 5.) Although he purports to "disaffirm[] all in-game purchases made through [*Game of Thrones: Conquest*] to date" (Am. Compl. ¶¶ 69, 163), P.W. has not attempted to— and cannot—disaffirm the TOU itself, which contains the arbitration agreement.[2]

---

[2] The Amended Complaint does not allege whether P.W. or a guardian signed up for the game account, but a minor cannot disaffirm an arbitration agreement entered into by a legal guardian. *See, e.g., Doyle v. Giuliucci*, 62 Cal. 2d 606, 610 (1965); *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559, 1564 (1990) ("A parent may contract on behalf of his or her children."). P.W. also could not disaffirm the TOU after enjoying access to the game and bringing an action that "derives from, relies on,
*(Cont'd on next page)*

## 2. *The Arbitration Agreement Encompasses Plaintiffs' Claims.*

Plaintiffs agreed to arbitrate the claims that they raise in this case.  When Ms. Mercieri and Ms. Neveu first signed into *Game of Thrones: Conquest*, they agreed that, apart from explicit exceptions not applicable here, "*any other dispute of any kind between you and Warner* arising under this Agreement or in connection with your use of the Service . . . will be resolved by binding arbitration."   (Ex. 1 [2018 TOU § 16(C)(1)]; *see* Am. Compl. ¶¶ 19–20.)  The other Plaintiffs initially accepted either the 2019 or 2020 TOU.  (*See supra*, at pp. 4–5; *see also* Am. Compl. ¶¶ 19–23.)  The 2019 TOU and 2020 TOU have a materially identical scope to the 2018 TOU: "Warner and you agree to arbitrate *all disputes and claims between us*, except for claims arising from bodily injury and that pertain to enforcing, protecting, or the validity of your or our intellectual property rights."  (Ex. 3 [2020 TOU § 16(A)] [emphasis added]; Ex. 2 [2019 TOU § 16(A)] [identical].)  This provision includes "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory," as well as "claims that arose before this or any prior Agreement (including, but not limited to, claims relating to *advertising*)."  (Ex. 3 [2020 TOU § 16(A)] [emphasis added]; Ex. 2 [2019 TOU § 16(A)] [identical].)  *See Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (recognizing breadth of "arising out of or relating to").

---

or is intimately intertwined with the subject contract containing the arbitration agreement." *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 717 (2010); *see also R.A.*, 2019 WL 6792801, at *5 (applying disaffirmation law of state "where Plaintiff was playing the game," which is Virginia here); *A.V. v. iParadigms, Ltd. Liability Co.*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008), *aff'd in part and rev'd in part on other grounds*, 562 F.3d 630 (4th Cir. 2009) ("[T]he infancy defense cannot function as 'a sword to be used to the injury of others'"). Regardless, the FAA's "equal-treatment principle" would preempt P.W.'s disaffirmation defense. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017).  To the extent Plaintiffs attempt to read California or Virginia law to treat arbitration contracts worse than contracts for so-called necessaries, such as the "provision of legal services," *Zelnick v. Adams*, 263 Va. 601, 608–09 (2002); Cal. Fam. Code § 6712, that would result in treating arbitration contracts differently and not "'on equal footing with *all* other contracts,'" *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015) (emphasis added), which the FAA precludes.

Gibson, Dunn &
Crutcher LLP

All of the claims—whether they sound in false advertising, unfair business practices, fraud, negligent misrepresentation, or minor disaffirmation of in-app purchases—relate to the way that Warner Bros. advertised or transacted in-app purchases of virtual items to Plaintiffs.  (Am. Compl. ¶¶ 113, 115–16, 133, 140, 148–53, 156–58, 164, 175, 189; *see supra*, at pp. 5–6.)  The claims constitute a "dispute of any kind" with Warner Bros. that is "in connection" with Plaintiffs' use of *Game of Thrones: Conquest*.  (Ex. 1 [2018 TOU § 16(C)(1)].)  Or put another way, the claims are "arising out of or relating to any aspect of the relationship" between Plaintiffs and Warner Bros.  (Ex. 2 [2019 TOU § 16(A)]; Ex. 3 [2020 TOU § 16(A)].)  This conclusion is the same for all Plaintiffs whether the Court applies the 2018, 2019, or 2020 TOU.[3]

The text of the parties' arbitration agreement speaks plainly and unambiguously and therefore "defines the scope of disputes subject to arbitration."  *Waffle House*, 534 U.S. at 289.  But even if a doubt were to remain, the federal presumption of arbitration under the FAA would compel the arbitration of Plaintiffs' claims.  This presumption dictates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  In other words, "issues will be deemed arbitrable unless it is clear that the arbitration clause has *not* included them."  *First Options*, 514 U.S. at 945 (emphasis

---

[3]  In this case, the Court decides the gateway question of whether the parties' agreement to arbitrate encompasses the claims raised by Plaintiffs.  The agreement incorporates the AAA Consumer Arbitration Rules, which provides "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015); *see* AAA Rule R-14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").  But the TOU itself carves out arbitrability from the delegation to the arbitrator:  "All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration are for the court to decide."  (Ex. 3 [2020 TOU § 16(C)]; Ex. 2 [2019 TOU § 16(C)].)  As explained above (*supra*, at p. 5 n.1), however, the 2018 TOU delegates questions of arbitrability to the arbitrator.  (Ex. 1 [2018 TOU § 16(C)(1)].)  If the 2018 TOU governs any of Plaintiffs' claims, then the parties agreed to arbitrate arbitrability, and this Court should compel those claims to arbitration without deciding whether there is a valid agreement to arbitrate or whether the arbitration provision covers the claims.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

added) (internal quotation marks omitted).  None of the TOUs evinces a discernable intent to exclude Plaintiffs' claims from the scope of the arbitration agreement.

### 3.   *The Claims Must Be Arbitrated on an Individual Basis*.

Plaintiffs cannot proceed on a classwide basis—either in court or in arbitration. Under the FAA, an order compelling arbitration must direct the parties to "proceed in the manner provided for" in the agreement.  9 U.S.C. § 4.  The TOUs here require Plaintiffs (1) to arbitrate their claims on an individual basis with individualized relief and (2) to waive any right to bring a class action.

At all relevant times, the TOU provided (in identical language) for individualized arbitration without class procedures.  Plaintiffs each agreed with Warner Bros. "that disputes will be resolved on an individual basis and that any claims brought under these Terms of Use or in connection with the [game] must be brought in the parties' individual capacities, and not as a plaintiff or class member in any putative class, collective, or representative proceeding." (Ex. 1 [2018 TOU § 16(C)(2)] [capitalization omitted]; *see* Ex. 3 [2020 TOU § 16(F)] [same]; Ex. 2 [2019 TOU § 16(F)] [same].)  They also agreed that "[t]he arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."  (Ex. 3 [2020 TOU § 16(F)]; Ex. 2 [2019 TOU § 16(F)]; *see also* Ex. 1 [2018 TOU § 16(C)(1)] [arbitrator can "grant whatever relief would be available in a court under law or in equity, *other than class relief*"] [emphasis added].)

*Concepcion* concerned the identical arbitration agreement at issue here, and the Supreme Court explained that this language "provided for arbitration of all disputes between the parties, but required that claims be brought in the parties' 'individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.'"  563 U.S. at 336.  As the Court observed, parties have good reason to agree to class action waivers because "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process

16

Gibson, Dunn &
Crutcher LLP

slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 348. The Court therefore held that the FAA preempts state laws that prevent parties from agreeing to individualized arbitration. *Id.* at 352.

Since *Concepcion*, the Supreme Court has reaffirmed in several decisions that federal courts "must enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Systems*, 138 S. Ct. at 1619; *see Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19 (2019); *Italian Colors*, 570 U.S. at 233; *see also, e.g.*, *Laver v. Credit Suisse Securities (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020). In fact, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

In short, the FAA ensures that class action waivers and individualized relief provisions are valid and enforceable. The parties here plainly agreed to "the traditional individualized arbitration contemplated by the FAA" without class procedures or requests for relief that extend beyond the arbitral claimant. *Lamps Plus*, 139 S. Ct. at 1415 (internal quotation marks omitted); *see Concepcion*, 563 U.S. at 344. The order compelling arbitration of Plaintiffs' claims should specify that arbitration must proceed on an individual basis under these terms.

## C.     The Court Should Stay the Case Pending Completion of Arbitration

Warner Bros. respectfully requests a stay of this case pending completion of arbitration. The FAA provides that a court, upon granting a motion to compel, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). Under Ninth Circuit precedent, this provision is not strictly mandatory. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). But courts routinely stay the action upon a party's request unless there is "reason to depart from the FAA's plain language" by dismissing the case. *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 902 (N.D. Cal. 2018); *see,*

Gibson, Dunn &
Crutcher LLP

1  *e.g.*, *Martinez v. Anthem Cos., Inc.*, No. 19-cv-3692-RGK-JPRx, 2019 WL 6825739,

2  at *2 (C.D. Cal. July 23, 2019).   There is no such reason to depart from Section 3's

3  command here.

4  

**V.    CONCLUSION**

5          Plaintiffs agreed to arbitrate their disputes with Warner Bros. on an individual

6  basis.   Despite that agreement, they have filed in court on behalf of themselves and a

7  putative class.   Warner Bros. respectfully requests that this Court compel the parties to

8  individual, non-class arbitration and then stay this case pending the completion of

9  arbitration.

10

11  Dated: June 13, 2022                    GIBSON, DUNN & CRUTCHER LLP

12

13                                          By:    */s/ Christopher Chorba*
                                                   Christopher Chorba

14                                          *Attorneys for Defendant Warner Bros.*
                                            *Entertainment Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28