CHRISTOPHER CHORBA, SBN 216692
   cchorba@gibsondunn.com
JEREMY S. SMITH, SBN 283812
   jssmith@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
   pfuster@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendant*
*Warner Bros. Entertainment Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARISSA KEEBAUGH, STEPHANIE NEVEU, HEATHER MERCIERI, SOPHIA NICHOLSON, and P.W., by and through JOIE WEIHER,<br><br>            Plaintiffs,<br><br>   v.<br><br>WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,<br><br>            Defendant. | CASE NO. 2:22-CV-01272-MEMF (AGRx)<br><br>**DEFENDANT WARNER BROS. ENTERTAINMENT INC.'S MOTION TO STAY PENDING APPEAL**<br><br>**Hearing:**<br>Date:     January 19, 2023<br>Time:    10:00 a.m.<br>Place:    Courtroom 8B<br>Judge:   Hon. Maame Ewusi-Mensah Frimpong |

Gibson, Dunn & Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 19, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maame Ewusi-Mensah Frimpong of the United States District Court for the Central District of California in the First Street Courthouse, Courtroom 8B, 350 West First Street, Los Angeles, California 90012, Defendant Warner Bros. Entertainment Inc. will and does move this Court for an order staying all proceedings until the Ninth Circuit issues its mandate in Defendant's appeal, No. 22-55982, from the order denying its motion to compel arbitration.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 27, 2022.

Defendant bases its Motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: November 10, 2022

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Christopher Chorba_
Christopher Chorba

*Counsel for Defendant Warner Bros. Entertainment Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ..................................................................................................... 1

III. LEGAL STANDARD .............................................................................................. 3

IV. ARGUMENT ........................................................................................................... 4

    A. The Appeal Raises Serious Legal Questions ............................................... 4

    B. Warner Bros. Will Be Irreparably Injured Absent a Stay ............................ 7

    C. Plaintiffs Will Suffer No Prejudice If the Court Stays Proceedings ............ 9

    D. The Public Interest Favors a Stay ................................................................ 9

    E. The *Landis* Test Reinforces that a Stay Is Appropriate ............................. 10

V. CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984) ................................................................................1, 3, 8

*Ali v. JP Morgan Chase Bank*,
2014 WL 12691084 (N.D. Cal. Mar. 10, 2014) ................................................................ 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................................................... 8

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal. App. 5th 931 (2022) ............................................................................................ 5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ............................................................................................ 5

*Britton v. Co-op Banking Grp.*,
916 F.2d 1405 (9th Cir. 1990) ............................................................................. 3, 4, 6, 7

*Carmona v. Dominos Pizza LLC*,
No. 20-1905-JVS, 2021 WL 3207958 (C.D. Cal. Mar. 31, 2021) ................................ 8, 9

*Delisle v. Speedy Cash*,
No. 18-2042-GPC, 2021 WL 7711287 (S.D. Cal. Feb. 16, 2021) ............................ 4, 5, 9

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ..................................................................................... 7

*Hart v. Charter Commc'ns, Inc.*,
No. 17-556-DOC, 2019 WL 7940684 (C.D. Cal. Aug. 1, 2019) ................................ 4, 10

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ......................................................................................................... 3

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*,
776 F.2d 812 (9th Cir. 1985) ........................................................................................... 8

*Kuang v. United States Dep't of Defense*,
2019 WL 1597495 (N.D. Cal. Apr. 15, 2019) ................................................................. 4

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) ......................................................................................................... 4

*Levin v. Alms & Assocs., Inc.*,
634 F.3d 260 (4th Cir. 2011) ............................................................................................ 3

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ......................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Maree v. Deutsche Lufthansa AG*,
 No. 20-885-MWF, 2021 WL 4352912 (C.D. Cal. June 21, 2021) .................................3, 4, 6, 7, 10

*McFaddin v. E.A. Renfroe & Co.*,
 No. 14-2369-VAP, 2015 WL 13774232 (C.D. Cal. Oct. 1, 2015) .............................................4, 10

*Merkin v. Vonage Am. Inc.*,
 No. 13-8026-CAS, 2014 WL 12701041 (C.D. Cal. Mar. 26, 2014)..................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)...........................................................................................................................10

*Murphy v. DirecTV, Inc.*,
 No. 07-6465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008)............................................3, 8, 9

*Nken v. Holder*,
 556 U.S. 418 (2009)..........................................................................................................................3

*Pearce v. E.F. Hutton Grp., Inc.*,
 828 F.2d 826 (D.C. Cir. 1987) .........................................................................................................6

*Perez v. DirecTV Grp. Holdings, LLC*,
 No. 16-1440-JLS, 2017 WL 8117452 (C.D. Cal. Sept. 22, 2017)....................................................6

*Revitch v. DirecTV, LLC*,
 2018 WL 5906077 (N.D. Cal. Nov. 9, 2018)...................................................................................9

*Sellers v. JustAnswer LLC*,
 73 Cal. App. 5th 444 (2021) .......................................................................................................2, 5

*Stern v. Cingular Wireless Corp.*,
 No. 05-8842-CAS, 2006 WL 2790243 (C.D. Cal. Sept. 11, 2006) ..................................................6

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
 No. 16-1953-DMG, 2018 WL 6074573 (C.D. Cal. Mar. 8, 2018) ...............................................8, 9

*Winig v. Cingular Wireless LLC*,
 No. 06-4297-MMC, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ............................................9, 10

**Statutes**

9 U.S.C. § 16 .........................................................................................................................................9

**Other Authorities**

*App Store*, Apple, https://www.apple.com/app-store/............................................................................6

## I. INTRODUCTION

Following the Court's order denying its motion to compel individual arbitration in this case, Warner Bros. promptly filed a notice of appeal. The Federal Arbitration Act provides for an interlocutory appeal as a matter of right because of the strong policy favoring arbitration. To allow that right to be meaningful in this case, the Court should stay all proceedings pending the appeal to the Ninth Circuit. As that court and numerous courts within this District recognize, if Warner Bros. "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration— speed and economy—are lost forever." *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). That is all the more true here, in a putative class action, where Plaintiffs intend to seek wide-ranging discovery while the matter is on appeal and to brief class certification in the next five months. But if the Ninth Circuit reverses this Court's decision, all of that will be for naught. Everyone in that scenario loses. A stay is necessary here.

## II. BACKGROUND

This putative class action lawsuit challenges certain aspects of a mobile application video game called *Game of Thrones: Conquest*. Based on the popular television series, players assemble armies and play against one another to amass the strongest house and compete for the "Iron Throne." This app, like many other free-to-play mobile video games, offers players the option to purchase bundles of virtual items to enhance their gameplay, such as virtual gold, weapons, food, and building material. (Am. Compl. ¶¶ 27–29, Dkt. 39.)

Plaintiffs Charissa Keebaugh, Stephanie Neveu, Heather Mercieri, Sophia Nicholson, and P.W. all decided to purchase virtual items after accessing *Game of Thrones: Conquest*. They contend that packs they purchased were improperly represented as "discounted" from their original price. They do not contend that they were charged a different amount from what was displayed on the screen, but instead that the advertised "discount" or "special" was illusory. (Am. Compl. ¶¶ 50, 56.)

Before filing a responsive pleading, Warner Bros. filed a motion to compel arbitration. (Dkt. 41.) Warner Bros. explained that the *Game of Thrones: Conquest* app, like many, requires users to complete a "sign-in flow"—*i.e.*, players may gain access only by accepting terms and conditions for

using the game. (*Id.* at 2.) The first paragraph of the terms and conditions disclosed prominently that the parties' contract requires arbitration on an individual basis without class procedures. (*Id.*)

Plaintiffs responded that they never agreed to arbitrate because the Terms of Use were not sufficiently conspicuous on the sign-in page. They identified as problematic several visual and auditory elements: "the striking graphic image of dragons," the audio playing "the Game of Thrones theme song," the size and color of the "Play" button, and the fact that the "phrase 'Terms of Service' is neither underlined, in all capital letters, nor in contrasting color such as blue." (Dkt. 46 at 8.) They also resisted arbitration in part on the ground that some provisions of the Terms of Use are purportedly unconscionable or cannot be enforced against requests for public injunctive relief, and that the minor plaintiff could disaffirm the Terms of Use. (*Id.* at 12–21.)

This Court, though recognizing that the parties had focused on "the visual elements of the Opening Screen to argue the issue of notice," identified another issue: whether a GOTC player is "required to create an account before playing the game." (Dkt. 52 at 11.) Relying on *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480 (2021), the Court reasoned that the lack of a "formal sign-up process" was decisive because the players purportedly would not realize that the sign-in page for the game was the "type of 'situation in which [t]he registration process clearly contemplated some sort of continuing relationship . . . that would require some terms and conditions.'" (Dkt. 52 at 11–12.) The Court additionally noted that players "who viewed the Opening Screens at Exhibits 6 and 7 would have an even lower expectation of being bound by Warner Bros.' terms due to the typographical error in the text"—specifically, the affirmation refers to Terms of Use whereas the hyperlink is labeled as Terms of Service. (*Id.* at 11.)

One week after the Court issued its order, Warner Bros. filed its notice of appeal. (Dkt. 54.) The parties then held a meet and confer to discuss this Motion and begin the Rule 26-mandated scheduling discussions. During that meet and confer, Warner Bros. explained that if Warner Bros. must litigate the case in the meantime, Warner Bros. will irrevocably lose its right to arbitrate this case using streamlined and efficient procedures. Plaintiffs disputed that a stay was appropriate and indicated they believed the Court should quickly hold a Rule 16 scheduling conference and order that Plaintiffs file their motion for class certification by the usual 120-day deadline. Warner Bros. disagreed because,

1 under this timeline, the Ninth Circuit's decision would be rendered essentially moot by litigating the claims through class certification in this Court. Many of the advantages of individual arbitration would already be lost forever.

After the telephonic meet and confer, the parties had extensive discussions about a potential compromise that would allow for this motion to be unopposed, but were unable to reach an agreement by the time of this filing. The parties are still attempting to negotiate a compromise that would lead to a stipulated proposed stay.

### III. LEGAL STANDARD

Courts in the Ninth Circuit and this District routinely grant motions to stay all proceedings while a party appeals from a denial of a motion to compel arbitration. *See, e.g.*, *Maree v. Deutsche Lufthansa AG*, No. 20-885-MWF, 2021 WL 4352912, at *5 (C.D. Cal. June 21, 2021); *Murphy v. DirecTV, Inc.*, No. 07-6465-FMC, 2008 WL 8608808, at *4 (C.D. Cal. July 1, 2008). In many circuits, a stay is mandatory, *e.g.*, *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263–66 (4th Cir. 2011), whereas district courts in the Ninth Circuit have discretion to deny a stay if the motion to compel does not "present[] a substantial question," *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) (worrying that defendants might "stall a trial simply by bringing a frivolous motion to compel arbitration"). All circuits, however, recognize the same basic insight: Because an arbitration appeal raises the question of where the parties should resolve their dispute, a stay ensures district court proceedings do not irreparably defeat arbitral rights subject to a good-faith dispute. *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

Courts in this District frequently use two tests to decide when to grant a stay pending an appeal of an order denying a motion to compel arbitration:

*First*, some courts have applied the four-factor test set out by the Supreme Court in *Nken v. Holder*, 556 U.S. 418 (2009), and *Hilton v. Braunskill*, 481 U.S. 770 (1987): "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Maree*, 2021 WL 4352912, at *2.

*Second*, other courts in this District evaluate stay requests pursuant to their "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," as guided by *Landis v. North American Co.*, 299 U.S. 248 (1936). *See, e.g.*, *Hart v. Charter Commc'ns, Inc.*, No. 17-556-DOC, 2019 WL 7940684, at *4 (C.D. Cal. Aug. 1, 2019) (collecting cases); *McFaddin v. E.A. Renfroe & Co.*, No. 14-2369-VAP, 2015 WL 13774232, at *1 (C.D. Cal. Oct. 1, 2015). These courts have reasoned that "the *Landis* test applies where, as here, a party seeks to stay the court's proceedings, rather than the effect of a judgment"—the latter being covered by the *Nken* test. *Hart*, 2019 WL 7940684, at *4; *see Kuang v. United States Dep't of Defense*, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019). The *Landis* factors include "(1) 'the possible damage that may result from the granting of a stay,' (2) 'the hardship or inequity which a party may suffer in being required to go forward,' and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Hart*, 2019 WL 7940684, at *3 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

## IV. ARGUMENT

Whether the Court utilizes the *Nken* or *Landis* factors, the result is the same: the factors weigh heavily in favor of the Court staying this case while Warner Bros. pursues its appeal.

### A. The Appeal Raises Serious Legal Questions

To secure a stay, Warner Bros. need not demonstrate "that success on appeal is more likely than not; rather, the moving party need only show that its appeal 'raises serious legal questions, or has a reasonable probability or fair prospect of success.'" *Maree*, 2021 WL 4352912, at *2. Said otherwise, the Court need not conclude that the Ninth Circuit will likely reverse or vacate its order denying the motion to compel but instead must find only that the motion to compel arbitration "presents a substantial question." *Britton*, 916 F.2d at 1412. This flexible test reflects pragmatic considerations: because this Court has already disagreed with Warner Bros. on the underlying issue, a "motion for stay is not the place to assess the full merits of" the original motion to compel arbitration, but requires a more limited analysis focused on "whether there is 'more than a mere possibility' of relief" on appeal. *Delisle v. Speedy Cash*, No. 18-2042-GPC, 2021 WL 7711287, at *4 (S.D. Cal. Feb. 16, 2021). Courts therefore regularly hold that a defendant has a fair prospect of success on appeal for purposes of a stay

1  even if those courts denied the underlying motion. *E.g.*, *id.* (recognizing the court has "in effect
2  disagree[d] with Defendant's reasoning" but still holding the defendant met the first factor).

3        Warner Bros.' appeal raises serious and substantial legal questions under *Berman v. Freedom*
4  *Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022).  There, the Ninth Circuit held that "[a] user's
5  click of a button can be construed as an unambiguous manifestation of assent only if the user is
6  explicitly advised that the act of clicking will constitute assent to the terms and conditions of an
7  agreement."  *Id.* at 857.  That's exactly what happened here:  the *Game of Thrones: Conquest* sign-in
8  screen told players that "By tapping 'Play' I agree to the Terms of Service" or "By tapping 'Play' I
9  accept the Terms of Use and acknowledge the Privacy Policy."  (Dkt. 41 at 2.)  The disclaimer and
10 hyperlink were legible, visibly distinct, and displayed immediately below the "Play" button—visual
11 features that distinguish cases involving textual clutter and "extremely small print" that was not
12 "immediately adjacent" to the button to reach the next screen.  *E.g.*, *Sellers*, 73 Cal. App. 5th at 482.
13 Warner Bros. thus has a high likelihood of success on appeal under the standard for sign-in wrap
14 agreements articulated in *Berman*.

15       There are at least two substantial arguments for why the decision denying Warner Bros.' motion
16 to compel conflicts with *Berman*.  First, the majority opinion in *Berman* looked exclusively to the visual
17 conspicuousness of the disclosure of and hyperlink to the terms and conditions.  The majority's laser
18 focus on the visual elements of the sign-in screens stood in marked contrast to the concurrence, which
19 had advocated "a different route" of decision through consideration of "'the full context of the
20 transaction'" under *Sellers*—a factor on which this Court placed dispositive weight.  30 F.4th at 861,
21 866–67 (Baker, J., concurring).  But under the *Berman* majority opinion, the fact that *Game of Thrones:*
22 *Conquest* does not require players "to create an account before playing" (Dkt. 52 at 10) does not defeat
23 the visually conspicuous notice of terms and conditions on the sign-in page.  And second, the context
24 of the transaction favors Warner Bros. at any rate.  The pertinent context is that players were accessing
25 a video game with valuable intellectual property on an ongoing basis—the precise situation where, as
26 in *B.D. v. Blizzard Entertainment, Inc.*, 76 Cal. App. 5th 931 (2022), one would reasonably expect "a
27 continuing, forward-looking relationship governed by terms and conditions."  *Id.* at 946.  This Court
28 distinguished *B.D.* because the player there had registered for an account.  (Dkt. 52 at 12.)  But

1  reasonable minds could conclude that neither *Sellers* nor *B.D.* holds that contract formation *requires*
2  "a formal sign-up process," even if one happened to exist in *B.D.* (*Id.*; *see* Dkt. 57 at 27 [Plaintiffs'
3  counsel characterizing the federal cases as "amorphous" at the hearing on the motion to compel
4  arbitration].) *See also Perez v. DirecTV Grp. Holdings, LLC*, No. 16-1440-JLS, 2017 WL 8117452, at
5  *2 (C.D. Cal. Sept. 22, 2017) (recognizing that even if the court found the defendant's cases
6  distinguishable, they still raised legal questions "sufficiently 'serious' to favor a stay").

7        This Court's holding on the context of the transaction also presents an "issue[] of first
8  impression," which confirms that the appeal raises a "serious legal" question. *Britton*, 916 F.2d at 1412
9  (citing *Pearce v. E.F. Hutton Grp., Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987)); *accord Stern v. Cingular*
10 *Wireless Corp.*, No. 05-8842-CAS, 2006 WL 2790243, at *1 (C.D. Cal. Sept. 11, 2006) ("defendants
11 have presented a substantial question" because "the Ninth Circuit has not yet filed any decision for
12 publication that squarely affirms or rejects" movant's argument). Warner Bros. is not aware of any
13 decision, let alone from the Ninth Circuit, holding that the lack of a "formal sign-up process"
14 established that an online game was not the "type of 'situation in which [t]he registration process clearly
15 contemplated some sort of continuing relationship . . . that would require some terms and conditions.'"
16 (Dkt. 52 at 11–12.) This was also not an argument advanced by Plaintiffs. (*Id.* at 11.) And this issue
17 is set to become only more prominent because current technology no longer requires a formal sign-up
18 process each time a user downloads a game or other software from a platform such as Apple or Google.
19 (Dkt. 51 at 5.) For example, Apple designed its App Store to allow users to "[p]urchase safely and
20 securely" in third-party applications without having to create an account or share financial information
21 with the app developers. *App Store*, Apple, https://www.apple.com/app-store/. And the vast majority
22 of apps do not require users to register for a separate account. This Court's decision casts doubt on the
23 terms and conditions of all those apps—seismic consequences that will inform the Ninth Circuit's
24 decision and thus favor a brief pause of the proceedings here.

25       A stay also would be consistent with practice in this District with respect to appeals concerning
26 sign-in wrap agreements. In *Maree*, Judge Fitzgerald observed that the issue of assent in this context
27 "raises a serious question of law" because the question whether the "design put users on inquiry notice
28 of its terms of use is highly context specific." 2021 WL 4352912, at *3. *Maree* involved a sign-in

screen whose design—unlike Warner Bros.' screens—"was extremely cluttered, rendering the Terms of Use link visually indistinct from the many other links on the page." *Id.* Even so, Judge Fitzgerald recognized "that many district courts," unlike this Court and his court, "have come to the opposite conclusion, holding that a website sufficiently puts consumers on inquiry notice where it provides the user with an opportunity to review the terms of service in the form of a hyperlink immediately above or below a button that must be clicked to place an order or register for an account." *Id.* (collecting cases). If an "extremely cluttered" screen raised a "serious question of law" that warranted a stay, then Warner Bros.' screen with just 24 words on the screen—almost all of which discussed the Terms of Use—certainly does.

No other aspect of this Court's decision suggests that Warner Bros.' appeal is a "frivolous" delay tactic. *Britton*, 916 F.2d at 1412. The Court reasoned that a "typographical error in the text" of two of the sign-in screens—that the disclaimer referred to the Terms of *Use*, while the hyperlink was labeled as Terms of *Service*—meant users "would have an even lower expectation of being bound by Warner Bros.' terms." (Dkt. 52 at 11.) But Warner Bros. has a substantial argument that a reasonable user would have understood that the Terms of Service button linked to the Terms of Use mentioned directly above and indeed could refer back to nothing else. The Ninth Circuit in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), approved of a sign-in agreement that also treated "Terms of Use'" and "Terms of Service" as synonyms, and had two different sets of terms, one for Turbo and TurboTax. *Id.* at 484. Demonstrating how reasonable minds can view these issues differently, that ruling drew a dissent, which reasoned, much like this Court, that this made the screen "confusing" and "enough to confound a reasonably prudent user." *Id.* at 485 (Tagle, J., dissenting). But the majority of the panel disagreed. The panel in Warner Bros.' appeal could disagree too, reasoning that "Terms of Service" and "Terms of Use" are synonyms. The appeal in this case therefore, at a minimum, raises serious legal questions.

**B.   Warner Bros. Will Be Irreparably Injured Absent a Stay**

Without a stay, Warner Bros. will suffer substantial and irreparable harm by being compelled to litigate an immensely expensive putative class action in direct contravention of the *individual* arbitration agreements that are at issue in the appeal.

As the Ninth Court has repeatedly recognized, this harm goes far beyond the time and expense that always attends the denial of a stay because it *also* entails the effective invalidation of a binding contract and the irreversible denial of the benefit of the bargain: "If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever. We find this consequence 'serious, perhaps, irreparable' . . . ." *Alascom*, 727 F.2d at 1422; *see also Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 776 F.2d 812, 815 (9th Cir. 1985) ("[D]enying the parties arbitration deprives them of an inexpensive and expeditious means of resolving the dispute" such that the district court's decision "depriv[ing] [defendant] of the opportunity to arbitrate the dispute [was] a decision with serious consequences that can only be challenged by immediate appeal"). That is why "numerous other district courts" have concluded that "'in the special context of [a] denied motion to compel arbitration,' the second [*Nken*] factor will generally be satisfied." *Murphy*, 2008 WL 8608808, at *2.

"[T]he additional fact of class certification litigation makes the irreparable harm factor weigh particularly in favor of Defendant." *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-1953-DMG, 2018 WL 6074573, at *3 (C.D. Cal. Mar. 8, 2018). Plaintiffs have never disputed that the Terms of Use contains a valid class action waiver that would require them to proceed on an individual basis in arbitration if the Ninth Circuit upholds Warner Bros.' sign-in screen. (Dkt. 41 at 16–17; *see* Dkt. 41-1, Ex. 1 [2018 TOU § 16(C)(2)]; Ex. 2 [2019 TOU § 16(F)]; Ex. 3 [2020 TOU § 16(F)].) *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). This means that litigation would unfold on a drastically different trajectory than individual arbitration: "[C]lass discovery would consume time and resources—and may also become harder as time progresses—most of it would prove useless if the action were compelled to arbitration on an individual basis. The same is true for any rulings on substantive motions. The cost of the prospective litigation would increase tremendously if the class were certified." *Carmona v. Dominos Pizza LLC*, No. 20-1905-JVS, 2021 WL 3207958, at *4 (C.D. Cal. Mar. 31, 2021).

Nor is any of this hypothetical. During the meet and confer, Plaintiffs stated that absent a stay they intended to press the Court to immediately brief any motion to dismiss, issue a scheduling order, and adhere to the Court's usual 120-day deadline for class certification motions. That means in all

likelihood, that the vast majority of discovery, including expert reports, will be completed well before the Ninth Circuit issues a decision. The Court will also likely have pending on its docket, if not already decided, hotly contested motions for class certification and summary judgment. And if the Ninth Circuit reverses, *all* of that work will be "useless" because the arbitration agreements here have class action waivers. *Carmona*, 2021 WL 3207958, at *4. Accordingly, this factors also cuts strongly in favor of a stay. *See, e.g.*, *Murphy*, 2008 WL 8608808, at *2.

### C. Plaintiffs Will Suffer No Prejudice If the Court Stays Proceedings

In marked contrast to the harms Warner Bros. faces if proceedings are not stayed pending appeal, any harm to Plaintiffs (or any putative class members they hope to represent) will be de minimis if the stay is granted. Any "possible monetary harm to the class" from the pendency of the stay can "be fully redressed" through pre-judgment interest should Plaintiffs ultimately prevail. *Murphy*, 2008 WL 8608808, at *3; *Winig v. Cingular Wireless LLC*, No. 06-4297-MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) ("any such injury can be redressed by an award of damages if plaintiff ultimately prevails").

Plaintiffs also cannot avoid a stay by speculating "that evidence may be lost over time." *Merkin v. Vonage Am. Inc.*, No. 13-8026-CAS, 2014 WL 12701041, at *2 (C.D. Cal. Mar. 26, 2014) (speculation insufficient); *Murphy*, 2008 WL 8608808, at *3 ("any risk of lost evidence is entirely speculative at this point"). "That is always a possibility when a stay is entered," and thus cannot counsel against a stay. *Revitch v. DirecTV, LLC*, 2018 WL 5906077, at *2 (N.D. Cal. Nov. 9, 2018); *Ali v. JP Morgan Chase Bank*, 2014 WL 12691084, at *1 (N.D. Cal. Mar. 10, 2014) (materially same).

Finally, "a decision by the Ninth Circuit may not be in the distant future." *Velasquez-Reyes*, 2018 WL 6074573, at *3. Under the Ninth Circuit's present schedule, the appeal will be fully briefed by March 22, 2023. This factor "also strongly favors" the issuance of a stay. *Murphy*, 2008 WL 8608808, at *3.

### D. The Public Interest Favors a Stay

The fourth and final factor under the *Nken* framework—the public interest—also favors a stay. In the arbitration context, as one district court recently explained, a "slew of case law directs the Court to conclude that a stay is in the public interest." *Delisle*, 2021 WL 7711287, at *6. That is because

"there is a strong public policy favoring arbitration, as evidenced by 9 U.S.C. § 16, which provides for interlocutory appeals when a motion to compel arbitration is denied, but not when one is granted." *Maree*, 2021 WL 4352912, at *4; *see also, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (recognizing a "liberal federal policy favoring arbitration"). And it "does not make sense for this Court to expend its time and energy preparing this case for trial and possibly trying it only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." *Winig*, 2006 WL 3201047, at *3 (quotation marks omitted). Accordingly, a "stay would promote the public interest in the economical use of judicial resources." *Id.*

\*   \*   \*   \*

In sum, all four factors under *Nken* favor the requested stay.

### E. The *Landis* Test Reinforces that a Stay Is Appropriate

The three *Landis* factors also all point in favor of a stay and provide an alternative ground for the Court to grant this motion:

*First*, the "possible damage that may result from the granting of a stay" is de minimis, as explained above. *Hart*, 2019 WL 7940684, at *4. Any injury Plaintiffs or putative class members suffer from the short delay can be remedied through monetary damages. *Supra* at p. 9.

*Second*, the "hardship" and "inequity" that will result without a stay is patent; in fact, "both parties could suffer harm if proceedings are not stayed. Depending on the ruling of the Ninth Circuit on appeal," "both parties could be required to engage in duplicative and unnecessary discovery and motions practice." *Hart*, 2019 WL 7940684, at *5; *see also McFaddin*, 2015 WL 13774232, at *2 ("Defendant will face substantial harm because it would be forced to use significant resources to litigate a nationwide class action and would be denied the time and cost-saving benefits of arbitration.").

*Third*, "the orderly course of justice" strongly supports a stay. *Hart*, 2019 WL 7940684, at *5. Again, it "does not make sense for this Court to expend its time and energy" deciding dispositive motions, assessing its propriety for class certification, and dealing with the myriad issues likely to arise, "only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." *Winig*, 2006 WL 3201047, at *3; *McFaddin*, 2015 WL 13774232, at *2 (proceeding ahead runs the risk that a "significant amount of the Court's resources would be expended in vain").

## V. CONCLUSION

Whether viewed through the prism of the *Nken* or *Landis* framework, the circumstances of this case strongly support the issuance of a stay. Very little will be gained, and much lost, by plowing ahead before the Ninth Circuit provides guidance on the proper forum for this dispute: individual arbitration or a putative class action. The Court should stay all proceedings in this case until the Ninth Circuit issues its mandate in Defendant's appeal, No. 22-55982.

Dated:  November 10, 2022   GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Christopher Chorba*
   Christopher Chorba

*Counsel for Defendant Warner Bros. Entertainment Inc.*